[No. 21342.   Department Two.   March 7, 1929.]

THE STATE OF WASHINGTON, *Respondent*, v. JACOB J. MILLER, *Appellant*.[1]

*Robertson, Paine & Schaaf*, for appellant.

*Chas. W. Greenough* and *Frank Funkhouser*, for respondent.

MAIN, J.—The defendant was charged by information with the crime of being a bootlegger. After the information was filed, he made a motion to suppress certain evidence. This motion was denied. Upon the trial, the liquor which it was sought to suppress was introduced in evidence. The trial resulted in a verdict

[1] Reported in 275 Pac. 75.

of guilty as charged. From the judgment entered upon the verdict, the defendant appeals.

The first question is whether the evidence should have been suppressed. This depends upon whether the arresting officers, at the time of making the arrest, had reasonable ground to believe that the appellant was engaged in bootlegging. A police officer of the city of Spokane and one of the arresting officers, testified as follows with reference to what prompted the arrest and the manner thereof:

"Well, the first time—I don't remember the exact date—the first time I saw the defendant some time along the fore part of November, he was driving a Chandler car that I had noticed before, and on the morning of the 17th of November, the defendant— Officer McClelland and I were standing on the corner of Washington and Main Avenue and we see the defendant driving the car—the same Chandler touring car right by us. I called Officer McClelland's attention to the car and told him I believed— . . .

"I called his attention to the car, and the car turned and stopped in front of the Central Hotel. The defendant reached back and opened the rear door of the car, and the man in the doorway walked out to the car, walking very fast, and reached in and got a sack, and from where we were standing the things that were in the sack looked like gallon jugs or were that shape, and we were reasonably sure, anyway, that they were jugs. . . .

"The man picked it up on his right arm and went back into the hotel entrance and looked both ways, and defendant closed the car door and pulled out very fast toward Bernard Street and turned south on Bernard. That was about twenty-five minutes to eight on the 17th, or near that time. The next time I see him was about the same time the following morning, and Officer Manning and I were standing on the same corner of Washington and Main, and the defendant came up the street, and I called Officer Manning's attention to the car and told him what had transpired the morning before, and we watched the car, and he pulled up

to the same Central Hotel entrance, and a man standing in the doorway ran out, and the defendant opened the back door, and he reached in and got another sack and the outfit were the same, or the same as near as we could tell to the ones that were taken out the morning before. A few minutes later the prowl car came around and we watched the car and it went on up east on Main and turned south on Bernard again, and we watched the car till it turned there, and about that time the prowl car containing Officer Wagner as driver and McClelland in the front seat came along and we stopped them and got in with them and drove around for about fifteen minutes before we located the car again, and we were going north on Brown near Riverside when we met this man driving the same Chandler touring car, and we turned around in the intersection of Riverside and Brown and swung right in behind him, and he turned west on Sprague Avenue and slowed up in front of the Nelson Hotel, and Officer Wagner drove the prowl car up along side of his car, and we could see the suitcases where the back seat should be; the cushion was out of the car and the suit cases were lying right on the floor. He slowed down in front of the Nelson hotel and there was a man standing pretty well back in the doorway, and the defendant evidently did not see him as he pulled up there, . . . because there was a car parked directly in front of this hotel entrance, and he pulled up past the car, and the defendant was looking up to his right and we were coming up on his left, and he apparently didn't see us at all, but the man in the doorway came up about half way out to the street from the doorway and seen the prowl car, and he turned around and went right back to the hotel. . . . The defendant pulled out and started to step on the gas, and we pulled the prowl car right in front of him so he couldn't come out, and Manning jumped out and onto his running board and told him he was under arrest, and I stepped out of the prowl car and stepped into the front seat.''

After the arrest was made, the appellant drove the automobile to the police station. The officers took two suit cases out of the car, and found in each of them

three one-gallon jugs of moonshine whiskey. It was this evidence which the appellant sought to suppress, and which he objected to being introduced upon the trial. The arrest was made without a warrant, and the search was made without a warrant. From the facts as stated in the officer's testimony as above quoted, it cannot be said that the arresting officers did not have reasonable ground to believe that the appellant, at the time of his arrest, was engaged in bootlegging. If they did have reasonable ground for that belief, they had a right to arrest without a warrant and the subsequent search was properly made. In *State v. Hughlett*, 124 Wash. 366, 214 Pac. 841, it is said:

"Circumstances, however, may arise where it is not only within the power of the police officers, but it is their duty to make arrest without any warrant therefor. In misdemeanor cases the officer may not arrest without a warrant therefor, except where the crime is being committed in his presence, or where he had actual knowledge that the person about to be arrested committed the crime. But in cases amounting to a felony, if the officer believe, and have good reason to believe, that a person has committed, or is about to commit, or is in the act of committing the crime, then he may arrest without a warrant. But the arresting officer must not only have a real belief of the guilt of the person about to be arrested, but such belief must be based upon reasonable grounds. Proper cause for arrest has often been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty. An officer may not arrest simply because he has some fleeting idea that one may be about to commit a felony, but he must have a reasonable ground for his belief."

In the case of *State v. Thornton*, 137 Wash. 495, 243 Pac. 12, applying the doctrine of that case, it was held that the officers were justified in arresting the accused

without a warrant and making a search for liquor without a search warrant, where they had information from officers of another county that he had been delivering liquor in violation of law, and would receive more on a certain early morning train, which he met, receiving two cases from the sleeping-car porter.

The case of *Brown v. United States,* 4 Fed. (2d series) 246, is different in its facts. There the accused removed a package from the back part of his automobile, and started up the street. The package was not smooth and, from its appearance, might contain bottles. He was then placed under arrest. Prior to that time, the arresting officer had been informed that the accused was a bootlegger, but the source of the information was not disclosed. On another occasion, the accused had delivered a package at an office building in the city of Portland, and the form of the package indicated that it might contain two bottles. It was there held that the facts furnished no reasonable grounds for belief on the part of the arresting officer that the accused was engaged in bootlegging.

In the case now before us, it may be said that any reasonable person, seeing what the witness stated that the officers saw, would reach the conclusion that the appellant was delivering intoxicating liquor to various hotels and, by prearrangement, was to be met at the door of the respective hotels by someone who would receive the gunny sacks in which the jugs of liquor were. The evidence was properly admissible, and no error was committed in the refusal of the court to suppress it.

█ Complaint is made of two instructions given to the jury by the trial court and the refusal of the court to give a requested instruction. The jury were expressly told that, before the appellant could be found guilty as charged in the information, it would be neces-

sary for the state to show by evidence beyond a reasonable doubt that the appellant carried about with him intoxicating liquor, namely, moonshine whiskey, for the purpose of unlawful sale of the same, and if the state failed to establish these facts then the defendant would not be guilty of the crime of bootlegging. Following this, an instruction covering the included offense of having liquor in possession was given, and in this connection the jury were told that possession and proof thereof would be prima facie evidence that such liquor was held or kept for the purpose of unlawful sale or disposition. The requested instruction was sufficiently covered by instructions given. The instructions which are complained of, as we understand them, are in accordance with the law as stated in *State v. Hodges,* 121 Wash. 362, 209 Pac. 843. Nowhere in the instructions were the jury told that the intent to sell, which is a necessary element of the offense of bootlegging, could be established prima facie by mere proof of possession.

The judgment will be affirmed.

HOLCOMB, PARKER, and FULLERTON, JJ., concur.