[Nos. 49022–8, 49107–1.  En Banc.  December 29, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. RUSSELL J. RINGER, *Petitioner.*

THE CITY OF BELLEVUE, *Respondent,* v. DANIEL EUGENE CORCORAN, *Petitioner.*

*Jill A. Salmi* and *Smith, Kaplan, Withey & Salmi,* for petitioner Ringer.

*Nancy L. Talner* of *Washington Appellate Defender Association,* for petitioner Corcoran.

*Patrick D. Sutherland, Prosecuting Attorney,* and *John S. Bumford, Deputy,* for respondent State.

*Linda M. Youngs, City Attorney,* and *Susan R. Irwin* and *Richard L. Kirkby, Assistants,* for respondent Bellevue.

*Michael C. Redman* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae for respondents.

DOLLIVER, J.—On November 6, 1979, defendant Ringer was stopped on Interstate 5 by a Washington state trooper and cited for a minor traffic violation. After releasing Ringer, state troopers discovered there was an outstanding felony warrant for his arrest for a violation of the Uniform Controlled Substances Act (RCW 69.50). The state patrol dispatcher put out a radio alert describing Ringer's van. State troopers subsequently found Ringer's van legally parked in the Scatter Creek rest area off the northbound lanes of Interstate 5 in Thurston County.

Three state troopers arrived at the Scatter Creek rest area and Ringer, who was in the van, was ordered over the microphone to get out of the van. He did so, through the side doors of the van, and the officers approached and arrested him. The troopers could see that there were no other occupants in the van. After arresting Ringer, the officers patted him down, handcuffed him, and placed him in a patrol car. They asked what he wanted done with his van, to which he responded that he would like it left there and would have someone pick it up.

During the arrest process, the troopers smelled a strong odor of marijuana coming from the van. After placing Ringer in the police car they decided to search the van both for inventory purposes and to look for weapons and marijuana. Inside they found a small clear bag of marijuana (containing less than 40 grams), two suitcases, a briefcase, a leather bag, and several other items. All of the luggage was closed, but unlocked. The troopers smelled marijuana in one of the suitcases, opened it, and found it full of large bags of marijuana. They then opened the remaining pieces of luggage and discovered cocaine and a bag of psilocybin mushrooms in the leather bag. The troopers seized the marijuana, the briefcase, and the leather bag, but left the other property and did not impound the van.

Ringer was charged with and convicted of (1) possession of a controlled substance (over 40 grams of marijuana); (2) possession of psilocybin; (3) possession of cocaine; and (4) possession of under 40 grams of marijuana.

On the morning of August 7, 1981, Bellevue police officers were advised that probable cause existed to arrest defendant Corcoran for suspicion of boat theft. The Bellevue police were given descriptions of Corcoran and his vehicle. Later that day, Police Officer Baker spotted Corcoran's car leaving a private residence. Officer Baker stopped Corcoran along a public highway.

Corcoran got out of his car and, after discussing the reason he had been stopped, was placed under arrest. He was handcuffed and placed in a patrol car. Meanwhile, another officer arrived and began to search Corcoran's car. In the front seat of the car the second officer discovered a partially open paper bag containing marijuana which Corcoran admitted was his. The report of proceedings does not indicate whether the search of Corcoran's car took place before or after Corcoran was handcuffed and placed in the patrol car. In his brief, however, Corcoran indicates that the search of his car took place after he was arrested.

The trial court found that there was no probable cause to search Corcoran's car but ruled that the search was valid as incident to a lawful arrest. The court then found Corcoran guilty of possession of less than 40 grams of marijuana.

The sole question presented on appeal is whether the search of Ringer's van and Corcoran's car violated U.S. Const. amend. 4 or Const. art. 1, § 7. There seems little doubt that the search of Ringer's van was permissible under U.S. Const. amend. 4. In *United States v. Ross,* 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982), the United States Supreme Court held that, as long as there was probable cause for the search, a police officer stopping a motor vehicle on a public highway could search both the vehicle and all containers in it without a warrant. Likewise, the search of Corcoran's car does not seem to have violated the federal constitution. In *New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the pas-

senger compartment of that automobile", and any container found therein. (Footnotes omitted.) *Belton,* 453 U.S. at 460.

■ Rather than engage in a further analysis as to the applicability of the Fourth Amendment, we instead focus on article 1, section 7 of our state constitution. *Cf. State v. White,* 97 Wn.2d 92, 640 P.2d 1061 (1982). In construing Const. art. 1, § 7 we look initially to its origins and to the law of search and seizure at the time our constitution was adopted. We next examine the evolution of state court analysis of Const. art. 1, § 7 in light of United States Supreme Court decisions interpreting U.S. Const. amend. 4. Finally, we review our own decisions to discern possible trends in our analysis and federal decisions to provide a historical context and guidance for our doctrinal development. *Cf. Michigan v. Long,* ___ U.S. ___, 77 L. Ed. 2d 1201, 103 S. Ct. 3469, 3475–77 (1983) (state courts may look to federal cases for guidance when construing state constitutions). We conclude that Const. art. 1, § 7 poses an almost absolute bar to warrantless arrests, searches, and seizures, with only limited exceptions which we will note below.

Const. art. 1, § 7 reads as follows:

> No person shall be disturbed in his private affairs, or his home invaded, without authority of law.

The provision was adopted by the Washington State Constitutional Convention in 1889. *Journal of Washington State Constitutional Convention, 1889,* at 497 (B. Rosenow ed. 1962) (hereinafter cited as *Journal*). The constitutional convention was presented with a proposed state provision identical to the fourth amendment to the United States Constitution and rejected it in favor of the present Const. art. 1, § 7. *See Journal,* at 51, 497. Unfortunately, history provides little guidance to the intention of the framers when they chose the specific language of Const. art. 1, § 7. *See generally Journal,* at vi–vii. Significantly, however, the framers also adopted Const. art. 27, § 2, which provides:

> All laws now in force in the Territory of Washington, which are not repugnant to this Constitution, shall remain in force until they expire by their own limitation,

or are altered or repealed by the legislature . . . *Journal,* at 865–66.

Const. art. 1, § 7 is not inconsistent with prohibitions against warrantless or otherwise arbitrary searches and seizures in effect in Washington Territory at the time the state constitution was adopted. In fact, our state constitutional provision "is declaratory of the common–law right of the citizen not to be subjected to search or seizure without warrant." *State v. McCollum,* 17 Wn.2d 85, 96, 136 P.2d 165 (1943) (Millard, J., dissenting). *Accord,* T. Cooley, *Constitutional Law* 229–33 (3d ed. 1898); F. Lieber, *Civil Liberty and Self–Government* 59 (3d rev. ed. 1880). The central principles of the common law in this area are best expressed in the English case *Entick v. Carrington,* 95 Eng. Rep. 807 (K.B. 1765). They have been summarized by a contemporary commentator as follows:

> [E]very official interference with individual liberty and security is unlawful unless justified by some existing and specific statutory or common law rule; any search of private property will similarly be a trespass and illegal unless some recognised lawful authority for it can be produced; in general, coercion should only be brought to bear on individuals and their property at the instance of regular judicial officers acting in accordance with established and known rules of law, and not by executive officers acting at their discretion; and finally it is the law, whether common law or statute, and not a plea of public interest or an allegation of state necessity that will justify acts normally illegal.

P. Polyviou, *Search & Seizure* 9 (1982). *See* 10 W. Holdsworth, *English Law* 667 (1938).

At the time the state constitution was adopted, law enforcement officers were authorized to obtain warrants to make arrests and to search for evidence of certain criminal activity. Code of 1881, §§ 967–68, 1026. No statutory provisions authorized warrantless arrests; nevertheless, law enforcement officials were allowed at common law to make warrantless arrests for a misdemeanor or felony committed in their presence or where probable cause existed that a

felony had been committed. 1 J. Stephen, *Criminal Law of England* 193 (1883); T. Cooley, *Constitutional Law* 232 (3d ed. 1898); 1 M. Hale, *Pleas of the Crown* 587 (1st ed. Am. 1847) (1st ed. London 1736). It seems universally recognized that warrantless searches were allowed of the person of an arrestee when incident to lawful arrest. *See, e.g., Weeks v. United States,* 232 U.S. 383, 392, 58 L. Ed. 652, 34 S. Ct. 341 (1914); *State ex rel. Murphy v. Brown,* 83 Wash. 100, 105–06, 145 P. 69 (1914); *Dillon v. O'Brien,* 20 L.R. Ir. 300, 316–17 (Ex. D. 1887); *Leigh v. Cole,* 6 Cox Crim. L. Cas. 329, 332 (Oxford Cir. 1853).

The common law "search incident to arrest" doctrine seems to have first been recognized in two 19th century English cases. In *Leigh v. Cole, supra,* a civil action for assault, plaintiff alleged the defendant, a police officer, unlawfully searched him after making an arrest for breach of the peace. The court rejected plaintiff's claim and stated that

> there is no doubt that a man when in custody may so conduct himself, by reason of violence of language or conduct, that a police officer may reasonably think it prudent and right to search him, *in order to ascertain whether he has any weapon* with which he might do mischief to the person or commit a breach of the peace; but at the same time it is quite wrong to suppose that any general rule can be applied to such a case. Even when a man is confined for being drunk and disorderly, it is not correct to say that he must submit to the degradation of being searched, as the searching of such a person must depend upon all the circumstances of the case.

(Italics ours.) *Leigh v. Cole,* 6 Cox Crim. L. Cas. at 332.

In *Dillon v. O'Brien, supra,* plaintiff brought a civil action for wrongful seizure of money and personal papers when he was arrested for conspiracy. Defendants, inspectors for the Irish constabulary, arrested plaintiff pursuant to an arrest warrant in a house he occupied and seized account books, papers, and money as evidence of the conspiracy. The court rejected plaintiff's claim, reasoning that the authority of police to search for and seize evidence

must be derived from the interest which the State has in a person guilty (or reasonably believed to be guilty) of a crime being brought to justice, and in a prosecution, once commenced, being determined in due course of law.

*Dillon v. O'Brien,* 20 L.R. Ir. at 317. The *Dillon* court reasoned that, the arrest of plaintiff being lawful,

[h]is custody is of no value if the law is powerless *to prevent the abstraction or destruction of this evidence,* without which a trial would be no more than an empty form. But if there be a right to production or preservation of this evidence, I cannot see how it can be enforced otherwise than by capture.

(Italics ours.) 20 L.R. Ir. at 317.

The earliest expression of the common law "search incident to arrest" doctrine in Washington is found in *State ex rel. Murphy v. Brown, supra.* In *Brown* defendant was arrested and charged with corruptly attempting to influence an agent. Plaintiff, a prosecuting attorney, appealed an order of the King County Superior Court directing him to return to defendant money and personal papers seized in connection with the charge. In *Brown* the court held that defendant voluntarily surrendered the money and papers to plaintiff. In dicta, however, the *Brown* court discussed the ability of the prosecutor to seize the evidence had defendant first been placed under arrest. The *Brown* court stated:

The general rule is that, where a person is legally arrested, the arresting officer has a right to search such person, and take from his possession money or goods which the officer reasonably believes to be connected with the supposed crime, and discoveries made in this lawful search may be shown at the trial in evidence.

83 Wash. at 105–06.

In *Brown* this court cited *Weeks v. United States, supra,* for the proposition that "the right to search the person of one under legal arrest . . . has always been recognized under English and American law, and has been uniformly maintained in many cases." *Brown,* 83 Wash. at 106. In *Carroll v. United States,* 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925), the United States Supreme

Court added the following embellishment to *Weeks*:

> When a man is legally arrested for an offense, whatever is found upon his person *or in his control* which it is unlawful for him to have and which may be used to prove the offense may be seized and held as evidence in the prosecution.

(Italics ours.) 267 U.S. at 158. In *Agnello v. United States,* 269 U.S. 20, 70 L. Ed. 145, 46 S. Ct. 4 (1925), the Supreme Court added:

> The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime *and to search the place where the arrest is made* in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted. See *Carroll* v. *United States,* 267 U. S. 132, 158; *Weeks* v. *United States,* 232 U. S. 383, 392.

269 U.S. at 30.

Years later, in his dissent in *United States v. Rabinowitz,* 339 U.S. 56, 94 L. Ed. 653, 70 S. Ct. 430 (1950), overruled in *Chimel v. California,* 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969), Justice Frankfurter lamented the "hint" of historical authority found in *Weeks* and its progeny for the premise that an arrest creates a right to search the place of arrest. According to Justice Frankfurter, these decisions

> merely prove how a hint becomes a suggestion, is loosely turned into dictum and finally elevated to a decision. This progressive distortion is due to an uncritical confusion of (1) the right to search the person arrested and articles in his immediate physical control and (2) the right to seize visible instruments or fruits of crime at the scene of the arrest with (3) an alleged right to search the place of arrest. . . .
>
> . . .
> The short of it is that the right to search the place of arrest is an innovation based on confusion, without historic foundation, and made in the teeth of a historic protection against it.

339 U.S. at 75, 79. Meanwhile, however, Washington courts

had allowed the scope of the search incident to arrest exception to Const. art. 1, § 7 to exceed by far any historical justification or precedent. In *State v. Hughlett,* 124 Wash. 366, 214 P. 841 (1923), the court authorized the warrantless search of an arrestee's automobile and his suitcase contained therein. According to the *Hughlett* court:

> It has always been held that a peace officer, when he makes a lawful arrest, may lawfully, without a search warrant, search the person arrested and take from him any evidence tending to prove the crime with which he is charged. If a search may be made of the person or clothing of the person lawfully arrested, then it would follow that a search may also be properly made of his grip or suitcase which he may be carrying. From this it seems to us to follow logically that a similar search, under the same circumstances, may be made of the automobile of which he has possession and control at the time of his arrest. This is true because the person arrested has the immediate physical possession, not only of the grips or suit cases which he is carrying, but also of the automobile which he is driving and of which he has control.

124 Wash. at 370.

In the years following *Hughlett* this court allowed searches incident to arrest well beyond the area of immediate control of the arrestee. In *State v. Deitz,* 136 Wash. 228, 239 P. 386 (1925), the court upheld the search by police of the trunk of an arrestee's automobile. In *Deitz* defendant was arrested for not having proper lights and license plates upon his vehicle. After he was arrested, police forcibly opened the trunk of his car and found 3 pints of moonshine whiskey. Similarly, in *State v. Miller,* 151 Wash. 114, 275 P. 75 (1929), this court allowed the search of an arrestee's automobile incident to his arrest for bootlegging. In *Miller* police had observed defendant making deliveries at two hotels in Spokane. Defendant was arrested and police drove his automobile to the police station and searched two suitcases found in the vehicle. According to the *Miller* court the validity of the search subsequent to arrest "depends upon whether the arresting officers, at the time of making

the arrest, had reasonable ground to believe that the appellant was engaged in bootlegging." 151 Wash. at 115. The *Miller* court answered the question in the affirmative and refused to suppress evidence found in defendant's suitcases.

After *Miller,* this court even abandoned the presence of the arrestee at the place of the search as a necessary predicate to its validity. In *State v. McCollum,* 17 Wn.2d 85, 136 P.2d 165 (1943), the court upheld the search of an arrestee's home as incident to his arrest even though he was hospitalized when the search was made. Similarly, in *State v. Cyr,* 40 Wn.2d 840, 246 P.2d 480 (1952), the court approved the search of an arrestee's automobile even though he was not an occupant of the vehicle at the time the arrest occurred. In *Cyr* the defendant was arrested while inside a restaurant and charged with the burglary of a tavern. After making the arrest, sheriff's deputies went outside and searched defendant's automobile. The *Cyr* court found that "the right, incident to a lawful arrest, to search an automobile owned but not then occupied by the accused" was a question of first impression. 40 Wn.2d at 843. The court concluded that

> the automobile in question was in such reasonably close proximity to the place of arrest, and there existed such probable cause to believe that a search of the vehicle would reveal evidence pertinent to the charge, that such search and seizure was incident to the arrest and therefore authorized by law.

40 Wn.2d at 844. *Accord, State v. Jackovick,* 56 Wn.2d 915, 916–17, 355 P.2d 976 (1960).

Finally, in *State v. Michaels,* 60 Wn.2d 638, 374 P.2d 989 (1962), this court began to impose restrictions on the authority of police to make searches pursuant to arrest. In *Michaels* the court ruled that

> an officer may take into custody a person who commits a misdemeanor in his presence, and upon making the arrest, may search the person *and his immediate environs for evidence of the crime or tools which would aid in the arrested person's escape.*

(Some italics ours.) 60 Wn.2d at 642–43. The *Michaels* court emphasized that the search, in order to be lawful, must be for items connected with the crime for which the person was arrested. *State v. Michaels, supra.* No attempt was made, however, to explain the precise scope of the limitation of the search to the person of the arrestee "and his immediate environs".

In the years immediately following *Michaels* this court disregarded the plethora of cases interpreting Const. art. 1, § 7 and began instead to rely on federal cases interpreting U.S. Const. amend. 4. *See, e.g., State v. Gluck,* 83 Wn.2d 424, 428, 518 P.2d 703 (1974); *State v. Darst,* 65 Wn.2d 808, 812, 399 P.2d 618 (1965); *State v. Riggins,* 64 Wn.2d 881, 886, 395 P.2d 85 (1964). In *Riggins* we quoted at length from the United States Supreme Court decision in *Preston v. United States,* 376 U.S. 364, 11 L. Ed. 2d 777, 84 S. Ct. 881 (1964), which we found controlling:

> Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. This right to search and seize without a search warrant extends to things under the accused's immediate control, and, to an extent depending on the circumstances of the case, to the place where he is arrested[.] The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest.

(Citations omitted.) *Preston v. United States,* 376 U.S. at 367, *quoted in Riggins,* 64 Wn.2d at 885. In *State v. Johnson,* 71 Wn.2d 239, 427 P.2d 705 (1967), we continued to

rely on federal precedent; nevertheless, we also continued to require that a search incident to arrest be for evidence of the crime for which the defendant was arrested. *See Johnson,* 71 Wn.2d at 243 (citing *Preston v. United States, supra; State v. Michaels, supra).*

Our most recent expression of the search incident to arrest doctrine is found in *State v. Simpson,* 95 Wn.2d 170, 622 P.2d 1199 (1980). In *Simpson* defendant was arrested pursuant to a warrant for first degree forgery. Defendant was taken to the Aberdeen police station where his personal possessions were inventoried. Police took a truck key from defendant's property box and returned with it to the scene of the arrest. There they opened the door of the pickup truck defendant was driving when arrested, checked the truck's vehicle identification number, and learned the truck was stolen. Defendant was subsequently charged with possession of stolen property.

The Grays Harbor Superior Court granted defendant's motion to suppress the evidence obtained as a result of the vehicle identification number. In a plurality opinion we affirmed the Superior Court decision. We rejected the State's argument the search was incident to arrest "because the respondent was not in the truck when arrested and had already been removed from the area when the search of the truck took place." *Simpson,* 95 Wn.2d at 191.

We perceive three stages in the prior development of the search incident to arrest exception to the warrant requirement. The exception began as a narrow rule intended solely to protect against frustration of the arrest itself or destruction of evidence by the arrestee. This was the scope of the exception when Const. art. 1, § 7 was adopted. In the early 20th century, however, both the federal courts and the courts of this state, with little or no reasoned analysis, expanded the exception until it threatened to swallow the general rule that a warrant is required. From 1964, when *Preston v. United States, supra,* was decided, until 1981, when it decided *New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), the United States

Supreme Court interpreted the search incident to arrest exception in a manner consistent with its common law origins. In those years we neglected our own state constitution to focus instead on protections provided by U.S. Const. amend. 4.

■■ We choose now to return to the protections of our own constitution and to interpret them consistent with their common law beginnings. To do so, however, we find it necessary to overrule several of our previous cases. To a greater or lesser degree, *State v. Hughlett,* 124 Wash. 366, 214 P. 841 (1923); *State v. Deitz,* 136 Wash. 228, 239 P. 386 (1925); *State v. Miller,* 151 Wash. 114, 275 P. 75 (1929); *State v. McCollum,* 17 Wn.2d 85, 136 P.2d 165 (1943); *State v. Cyr,* 40 Wn.2d 840, 246 P.2d 480 (1952); and *State v. Jackovick,* 56 Wn.2d 915, 355 P.2d 976 (1960) are all without historic foundation and are inconsistent with traditional protections against the ability of law enforcement officers to make warrantless searches and seizures. For too long they have been allowed to lie fallow in the fields of our state jurisprudence. To the extent these cases and others not specifically mentioned are inconsistent with this opinion, they are no longer to be followed by the courts of this state.

Based on our understanding of Const. art. 1, § 7, we conclude that, when a lawful arrest is made, the arresting officer may search the person arrested and the area within his immediate control. *See State v. Michaels, supra.* A warrantless search in this situation is permissible only to remove any weapons the arrestee might seek to use in order to resist arrest or effect an escape and to avoid destruction of evidence by the arrestee of the crime for which he or she is arrested. *Compare Dillon v. O'Brien,* 20 L.R. Ir. 300 (Ex. D. 1887) *with Leigh v. Cole,* 6 Cox Crim. L. Cas. 329 (Oxford Cir. 1853). The right to search incident to arrest "is merely one of those very narrow exceptions to the 'guaranties and immunities which we had inherited from our English ancestors, and which had from time immemorial been subject to certain well–recognized exceptions arising from

the necessities of the case.'" *United States v. Rabinowitz,* 339 U.S. 56, 72, 94 L. Ed. 653, 70 S. Ct. 430 (1950) (Frankfurter, J., dissenting) (quoting *Robertson v. Baldwin,* 165 U.S. 275, 281, 41 L. Ed. 715, 17 S. Ct. 326 (1897)). The exception must be "jealously and carefully drawn", and must be strictly confined to the necessities of the situation. *See generally State v. Houser,* 95 Wn.2d 143, 149, 622 P.2d 1218 (1980).

In the present cases neither the search of defendant Corcoran's car nor of defendant Ringer's van can be justified as a search incident to arrest. In Ringer defendant got out of his van prior to being placed under arrest. State troopers did a pat–down search, arrested Ringer, did a complete body search, handcuffed him, and placed him in a patrol car. Only after Ringer was handcuffed and removed from the immediate vicinity of his van did the troopers search the vehicle. Likewise, in Corcoran, defendant left his vehicle prior to being placed under arrest. He had been handcuffed and placed in a patrol car when police searched his vehicle.

The question remains whether the search of Ringer's van could be justified under the so–called "exigent circumstances" exception to the general prohibition against warrantless searches and seizures. At common law no exceptions to the requirement of a warrant, except for the "search incident" exception, were explicitly recognized. *See* 9 Halsbury, *Laws of England* 100–01 (2d ed. 1933). *See also Davis v. United States,* 328 U.S. 582, 603, 90 L. Ed. 1453, 66 S. Ct. 1256 (1947) (Frankfurter, J., dissenting). In *State v. Gibbons,* 118 Wash. 171, 203 P. 390 (1922), we declined to follow federal precedent establishing a so–called "automobile exception":

> [M]anifestly the constitutional guaranty that "no person shall be disturbed in his private affairs, or his home invaded, without authority of law," protected the person of appellant, and the possession of his automobile and all that was in it, while upon a public street of Ritzville, against arrest and search without authority of a warrant

of arrest, or a search warrant, as fully as he would have been so protected had he and his possession been actually inside his own dwelling; that is, his *"private affairs"* were under the protection of this guaranty of the constitution, whether he was within his dwelling, upon the public highways, or wherever he had the right to be.

118 Wash. at 187–88. *But see State v. Houser,* 95 Wn.2d 143, 149, 622 P.2d 1218 (1980) (applying federal law).

■ We have recognized, however, that where police have probable cause to conduct a search, they may do so without a warrant when *"they are confronted by emergencies and exigencies* which do not permit reasonable time and delay for a judicial officer to evaluate and act upon probable cause applications for warrants by police officers." *State v. Smith,* 88 Wn.2d 127, 135, 559 P.2d 970 (1977). (*See State ex rel. Linn v. Superior Court,* 20 Wn.2d 138, 145, 146 P.2d 543 (1944). "Constitutions are designed to endure through the years, and constitutional provisions should be interpreted to meet and cover changing conditions of social and economic life.") Under the doctrine of exigent circumstances, the totality of circumstances said to justify a warrantless search will be closely scrutinized. *State v. Bean,* 89 Wn.2d 467, 472, 572 P.2d 1102 (1978). The burden is on those seeking the exemption to show that the exigencies of the situation made that course imperative. *State v. Bean, supra.*

The amount of time necessary to obtain a warrant by traditional means has always been considered in determining whether circumstances are exigent. *See United States v. Cuaron,* 700 F.2d 582, 589 (10th Cir. 1983); *United States v. McEachin,* 670 F.2d 1139, 1146 (D.C. Cir. 1981). *See also State v. Melin,* 27 Wn. App. 589, 592, 618 P.2d 1324 (1980); *State v. Orcutt,* 22 Wn. App. 730, 737, 591 P.2d 872 (1979). CrR 2.3(c) and JCrR 2.10(c) allow for the issuance of a search warrant based on the sworn telephonic statement of the officer seeking the warrant, provided, of course, that the statement is properly recorded and subsequently transcribed. The provisions of CrR 2.3(c) and JCrR

2.10(c) closely parallel Fed. R. Crim. P. 41(c)(1), (2). 4A L. Orland, Wash. Prac. § 6162 (3d ed. 1983). As the Federal Advisory Committee on Rules stated:

> The unavailability of [a telephonic warrant] procedure . . . makes more tempting an immediate resort to a warrantless search in the hope that the circumstances will later be found to have been sufficiently "exigent" to justify such a step.

Fed. R. Crim. P. 41(c)(2), Notes of Advisory Committee on Rules, 1977 Amendment, *reprinted in* 18 U.S.C. app. at 1672, 1674 (Supp. 3, 1979), *quoted in McEachin,* 670 F.2d at 1147. Like the federal rule, CrR 2.3(c) and JCrR 2.10(c) are intended to encourage law enforcement officers "to seek search warrants in situations when they might otherwise conduct warrantless searches." S. Rep. No. 354, 95th Cong., 1st Sess. 10, *reprinted in* 1977 U.S. Code Cong. & Ad. News 527, 534; H.R. Rep. No. 195, 95th Cong., 1st Sess. 10 (1977).

We conclude that the availability of a telephone warrant must also be considered in determining whether exigent circumstances exist. *See State v. Bean, supra. Accord, United States v. McEachin, supra.* According to one commentator:

> The availability of a search warrant via telephone or other electronic means obviates much of the claimed exigency justification for a warrantless search for objects. . . . Administrative obstacles heretofore cited for not securing a search warrant by appearing before a magistrate must now be examined in a different light. Such factors as the distance from a magistrate, the time required to appear before a magistrate, the normal business hours of a magistrate, the inconvenience of securing and dispatching additional agents to appear before a magistrate are now less determinative in justifying the exception. A magistrate, and a search warrant, can be as close as the nearest telephone or mobile radio. The mobility, and thus the risk of loss, of the object to be searched and property to be seized is reduced in importance.

Marek, *Telephonic Search Warrants: A New Equation for Exigent Circumstances,* 27 Clev. St. L. Rev. 35, 38 (1978).

In the present case there is no showing that the exigencies of Ringer's arrest made it impractical for state troopers to obtain a warrant prior to the search of Ringer's van. The vehicle was "lawfully parked" and immobile at the Scatter Creek rest area and "did not impede traffic or threaten public safety or convenience." *State v. Simpson,* 95 Wn.2d 170, 190, 622 P.2d 1199 (1980). Presumably, state troopers at the scene of the arrest had probable cause to search Ringer's van. Nevertheless, they have made no showing that a telephonic warrant could not have been obtained to search the vehicle. CrR 2.3(c); JCrR 2.10(c). *See State v. Bean, supra. Accord, United States v. Cuaron, supra; United States v. McEachin, supra.*

We reverse the convictions of Russell J. Ringer and Daniel Eugene Corcoran. We conclude that the search of Ringer's van and Corcoran's car exceeded the authority of law enforcement officers to search pursuant to arrest. Furthermore, while state troopers may have had probable cause to search Ringer's van, they have failed to show that exigent circumstances obviated the need to seek a warrant prior to the search.

Reversed.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, and PEARSON, JJ., concur.

DIMMICK, J. (dissenting)—Once again we confound the constabulary and, by picking and choosing between state and federal constitutions, change the rules after the game has been played in good faith. I respectfully dissent from these tactics.

As the majority's historical treatise points out, for at least 15 years we have interpreted the scope of searches incident to arrest in accordance with federal pronouncements under the Fourth Amendment. Majority opinion, at 697. *Compare State v. Larson* 93 Wn.2d 638, 611 P.2d 771 (1980) *with State v. Darst,* 65 Wn.2d 808, 399 P.2d 618 (1965). Contrary to the majority's assertion, we have also in

effect recognized the "automobile exception," finding warrantless automobile searches valid under certain circumstances. *See State v. Sullivan*, 65 Wn.2d 47, 395 P.2d 745 (1964) (relying on *Carroll v. United States*, 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925)). *See also State v. Cagle*, 5 Wn. App. 644, 490 P.2d 123 (1971). At about the time that the searches at issue here took place, this court confidently stated that

> Because of the inherent mobility of a motor vehicle, it is impracticable in many situations to obtain a warrant prior to a vehicle search. In situations of this type, police officers may conduct a warrantless search as long as they have probable cause to believe that the vehicle contains contraband or evidence of a crime.

*State v. Simpson*, 95 Wn.2d 170, 183, 622 P.2d 1199 (1980) (citing federal precedent). *See also State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980).

In the past, we have not clearly distinguished between "automobile exception" search cases and cases involving search of vehicle incident to arrest. In *State v. Gluck*, 83 Wn.2d 424, 518 P.2d 703 (1974), we held:

> Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused, or of things under the accused's immediate control, for weapons or for the fruits of or implements used to commit the crime. The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to discover and prevent the loss or destruction of evidence of the crime. Since the individuals involved in this case were taken into custody contemporaneously with the search of their vehicle, the search is readily justified as a search incident to a lawful arrest carried out with the reasonable belief that the vehicle was carrying fruits of the crime.

(Citations to federal precedent omitted.) *Gluck*, at 428. We followed the rule that the test for a vehicle search is reasonableness, depending on the facts, circumstances, and

exigencies of the situation confronting the police officers. *State v. Gibson,* 76 Wn.2d 814, 459 P.2d 22 (1969), *cert. denied,* 399 U.S. 912 (1970); *see also State v. Taylor,* 22 Wn. App. 308, 589 P.2d 1250, *review denied,* 92 Wn.2d 1013 (1979). But when the circumstance was lawful arrest from a vehicle, with probable cause to believe the vehicle carried contraband, the warrantless vehicle search was deemed reasonable. *State v. Gluck, supra.*

The rule arises from a commonsense view of the situation facing the police officer. *See Texas v. Brown,* __ U.S. __, 75 L. Ed. 2d 502, 103 S. Ct. 1535 (1983). In general, requiring a warrant at a vehicular arrest is impractical and, more often than not, superfluous. The facts here illustrate the point. No magistrate would deny a warrant to search Ringer's van when presented with a sworn statement that the police officer smelled marijuana emanating from the vehicle. Yet the delay from the time of arrest to the receipt of a warrant could cause "exigencies" that can only be assessed after the fact.

Now the majority refuses to find that a contemporaneous search of an arrestee's automobile, with probable cause present, is valid. The majority ignores the practical difficulties that have historically validated automobile searches based on probable cause. It merely holds the search unjustified as a search incident to lawful arrest. Because, although heretofore undiscovered, our state constitution mandates a warrant prior to automobile searches? Or because automobile searches incident to arrest are always unreasonable? But only if the arrestee is handcuffed? Only if the arrestee manages to jump quickly out of the vehicle before the officer approaches it? Should the breadth of one's constitutional protections depend on these distinctions?

I fear that the confusion the dissent foresaw in *State v. Simpson, supra,* has become a reality. The majority disapproves the precedent we have previously required law enforcement officials to heed. Police officers are now told to disregard federal constitutional principles under the cir-

cumstances this case presents. Predicting the proper course of action for the officer's daily encounters with unexpected situations arising during arrests from vehicles will be precarious.[1] This decision compounds the confusion by throwing into doubt untold number of convictions based on searches made pursuant to the established case law.

Moreover, this sudden leap to the sanctuary of our own state constitution affords no real increase in constitutional protection to the defendant. As already noted, prior judicial evaluation of the probable cause in many cases would be only a formality. The warrant could not give the defendant any more protection than was already provided by the probable cause requirement. The officer is thus required to jump through technical hoops with no commensurate furthering of constitutional objectives.

I cannot join in a decision that does nothing to clarify either a defendant's rights or a police officer's obligations when arresting a suspect from a vehicle. I therefore dissent.

DORE, J., concurs with DIMMICK, J.

Reconsideration denied February 29, 1984.

---

[1]In *State v. Southard*, 32 Wn. App. 599, 648 P.2d 504 (1982), a sheriff's deputy requested a legal opinion from the prosecutor regarding the validity of a warrantless search before attempting to locate a vehicle reportedly carrying hashish. The search was considered valid, apparently on the basis of federal law. Now, an opinion of validity could not be rendered, nor is it clear when a search warrant could or should be issued in a similar situation.