[No. 18531-4-I.   Division One.   February 8, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. JULES CAMPOS DIOGO, SR., *Defendant,* CALVIN LEE LAUVER, *Appellant.*

*Julie A. Kesler* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michael Danko, Deputy,* for respondent.

PER CURIAM.—This is a continuation of an *Anders*[1] case following supplemental briefing. We allow counsel to withdraw pursuant to her *Anders* petition.

## FACTS

Thomas Kettells, a Mercer Island undercover narcotics detective, was involved in an investigation of a sale of a quantity of cocaine. He was working with a citizen informant named Bob Barth. Kettells negotiated with Calvin Lauver for approximately a week on the purchase of a quantity of cocaine. On August 1, 1985, as previously arranged, Kettells met Barth and Lauver at a parking lot in Kirkland to complete the cocaine transaction. Barth remained in the car in which he and Lauver had arrived, while Lauver sat in Kettells' vehicle and discussed the cocaine delivery. They arranged to meet in the parking lot again after Lauver had obtained the cocaine.

Later, Lauver, Diogo and Barth met Kettells in the parking lot. Kettells had parked his vehicle facing a rock wall. Two surveillance vehicles were parked behind him. Lauver, Diogo and Barth parked next to him in a Cadillac. Lauver got out of the Cadillac and opened the hood. Kettells got out of his vehicle, and Lauver motioned him over to the driver's window of the Cadillac. Lauver walked over, stood beside Kettells, and they discussed the cocaine deal with Diogo, who was sitting in the driver's seat. Kettells

---

[1] *Anders v. California,* 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967).

asked to see the cocaine, and Diogo handed him a plastic baggie containing some large folded, sealed bindles. Kettells opened one of the bindles and smelled the cocaine. He then put the bindle back in the baggie and handed it back to Diogo. Initially, the deal was for 6 ounces, but Lauver informed Kettells that it was only for 3 ounces. Kettells told Diogo that he had brought money for 6 ounces, so he had to go back to his car to separate out half the money.

Kettells went back to his car, gave the bust signal by stepping on the brake lights of the vehicle, and then started to count the money.

After several moments, two detectives who were parked behind Kettells got out of their car and approached the rear of the Cadillac with guns drawn. They announced that they were police and asked everybody to freeze and move out of and to the rear of the car. Then two other detectives arrived and took custody of Lauver and the other suspects.

Kettells then walked between his car and the Cadillac. The door of the Cadillac was open, so he began to push the door shut when he observed a baggie on the floor in front of the driver's seat. This was the baggie Kettells had seen and handled earlier. He reached in, took the baggie and placed it in his coat pocket. He then helped place the suspects in police cars. The he went back and searched the Cadillac.

Counsel for Lauver and Diogo made a pretrial motion to suppress evidence of the cocaine on the basis that officers could not search the automobile without a search warrant pursuant to the Supreme Court holding in *State v. Ringer*, 100 Wn.2d 686, 674 P.2d 1240 (1983). The trial court denied the motion on the basis that there was no right to privacy where Diogo had already displayed the baggie and handed it to Kettells and that this was a drug buy and not a search.

On March 26, 1986, Lauver was found guilty of a violation of the Uniform Controlled Substances Act for delivery of cocaine. By order dated May 21, 1986, the Washington Appellate Defender Association was appointed to represent Lauver on appeal. Counsel filed a motion to withdraw in

accordance with RAP 15.2(h) and *Anders v. California,* 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967).

On July 7, 1987, the Court of Appeals denied counsel's motion to withdraw. The parties were directed to submit additional memorandums addressing the question of whether *State v. Ringer, supra,* or *State v. Stroud,* 106 Wn.2d 144, 720 P.2d 436 (1986) controls the disposition of this case.

## RETROACTIVITY OF *STATE V. STROUD*

Lauver's counsel argues that, although *Stroud* is a clear break with past law, it cannot be said that law enforcement officials relied on *Ringer,* nor can it be said that there would be a disruptive effect on the administration of justice if *Stroud* were retroactively applied.

In 1986, the Washington Supreme Court held that officers may search the passenger compartment of a vehicle for weapons or destructible evidence as part of a search incident to arrest. *State v. Stroud, supra* at 152. Only if the officers encounter a locked container or glove compartment must they cease their search and apply for a search warrant. *State v. Stroud, supra* at 152. The decision in *Stroud* partially overruled *Ringer,* which had held that absent exigent circumstances, a warrantless search of a suspect's vehicle was impermissible. *State v. Ringer, supra* at 701. The court in *Ringer* viewed the "totality of [the] circumstances" surrounding the arrest, and decided that the burden was on the police officers to show that the exigencies of the particular situation required a warrantless search. *State v. Ringer, supra* at 701. Although *Stroud* was decided after Lauver's conviction, we conclude that it should be retroactively applied, and thus evidence of the cocaine was properly admitted.

The constitution neither prohibits nor requires that retroactive effect be given to any "new" constitutional rule. *Linkletter v. Walker,* 381 U.S. 618, 629, 14 L. Ed. 2d 601, 85 S. Ct. 1731 (1965). Under traditional retroactivity analysis, three factors are to be balanced to determine whether a

new constitutional rule should be retroactively applied: (a) whether the purpose of the new rule would be served by retroactive application, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect that retroactive application of the new standards would have on the administration of justice. *Stovall v. Denno,* 388 U.S. 293, 297, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 (1967). The Washington Supreme Court adopted this standard in *In re Sauve,* 103 Wn.2d 322, 328, 692 P.2d 818 (1985).

Recently, this rule has been modified. In *United States v. Johnson,* 457 U.S. 537, 73 L. Ed. 2d 202, 102 S. Ct. 2579 (1982), the Court determined that traditional retroactivity analysis was controlling in three categories of cases: (1) cases in which the court merely applied settled precedents to new and different factual situations, (2) cases in which the court declared a rule of criminal procedure to be "a clear break with the past," and (3) cases in which the court ruled that the trial court lacked authority to convict or punish the criminal defendant in the first instance. *United States v. Johnson, supra* at 548–51.

Finally, *Johnson* established a new category of cases that do not fit any of the three categories covered by past retroactivity analysis. In those cases, the rule of the new decision is applied retroactively to all convictions that were not yet final at the time the decision was rendered. *United States v. Johnson, supra* at 562.

*Stroud* is not a case in which the court merely applied settled precedents to new factual situations. Nor is it a case in which the court ruled that the trial court lacked authority to convict or punish. Thus, traditional retroactivity analysis applies only if *Stroud* constitutes a clear break with the past.

The Court in *Johnson* described the category of cases in which the Court declared a rule of criminal procedure to be "a clear break with the past" as follows:

In general, the Court has not subsequently read a decision to work a "sharp break in the web of the law,"

unless that ruling caused "such an abrupt and fundamental shift in doctrine as to constitute an entirely new rule which in effect replaced an older one". Such a break has been recognized only when a decision explicitly overrules a past precedent of this Court, or disapproves a practice this Court arguably has sanctioned in prior cases, or overturns a longstanding and widespread practice to which this Court has not spoken, but which a near–unanimous body of lower court authority has expressly approved.

(Citations omitted.) *United States v. Johnson, supra* at 551.

The decision in *Ringer* was held to be "a clear break with the past" because the court abruptly shifted to an analysis under article 1, section 7 of the Washington Constitution and explicitly overruled a number of prior cases. *State v. Jordan,* 39 Wn. App. 530, 545, 694 P.2d 47 (1985).

The decision in *Stroud* expressly partially overrules *Ringer. State v. Stroud, supra* at 150–51. However, the ruling in *Stroud* does not cause "'such an abrupt and fundamental shift in doctrine as to constitute an entirely new rule which in effect replaced an older one'". *Johnson,* at 551. The court's decision in *Stroud* was an attempt to draw a clearer line to aid police enforcement, although because of Washington's additional protection of privacy rights, it drew the line a little differently than did the United States Supreme Court in *New York v. Belton,* 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981). The court in *Stroud* said that *Ringer* makes it virtually impossible for officers to decide whether or not a warrantless search would be permissible. Weighing the "totality of circumstances" is too much of a burden to put on police officers who must make a decision to search with little more than a moment's reflection. *State v. Stroud, supra* at 151.

Instead of entirely replacing *Ringer, Stroud* gives police officers clearer guidelines in order to strike a reasonable balance that allows for both effective police enforcement and also protection of individual rights. Thus, we conclude that *Stroud* does not constitute a clear break with the past and should be applied retroactively to all convictions that were not yet final at the time the decision was rendered. *United States v. Johnson, supra* at 562.

## WAIVER OF PRIVACY

An additional ground for our decision is that Lauver no longer had a privacy interest in the baggie of cocaine once he had disclosed it to the officer who eventually took it into his possession.

█ Const. art. 1, § 7 provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." The unique language of Const. art. 1, § 7 provides greater protection to persons under the Washington Constitution than U.S. Const. amend. 4 provides to persons generally. *State v. Myrick,* 102 Wn.2d 506, 510, 688 P.2d 151 (1984). Under the Washington Constitution, the relevant inquiry for determining when a search has occurred is whether the State unreasonably intruded into the defendant's "private affairs". *State v. Myrick, supra* at 510.

In the present case, Officer Kettells' act of taking the baggie of cocaine from the car did not constitute an unreasonable intrusion into Lauver's "private affairs" because just moments earlier Lauver had invited Kettells to handle the cocaine in anticipation of a sale of the cocaine to Kettells.

Accordingly, we allow counsel to withdraw on the grounds that there are no arguable issues on appeal and that the appeal is frivolous.