[No. 13123-8-III.   Division Three.   January 12, 1995.]

*In the Matter of the Marriage of* NANETTE M. ABEL, *Appellant and,* DANIEL C. ABEL, *Respondent.*

---

*William S. Lowry*, for appellant.

*Richard G. Wernette* and *McAdams, Ponti & Wernette*, for respondent.

THOMPSON, C.J. — Nanette Tettaton (formerly Abel) appeals the Superior Court's findings, conclusions, and order modifying child support. She contends the court erred in setting the amount of child support payments to be made by her former husband, Daniel Abel. The court used a child support worksheet from Montana, where she and the two children currently live. She raises two issues: (1) Did Mr. Abel comply with the procedural requirements for proving out-of-state law, and (2) does Montana law apply in this case? We reverse.

Ms. Tettaton and Mr. Abel married in 1978. Their marriage was dissolved in Walla Walla County in 1990. They have a son and a daughter, born in 1980 and 1984. The origi-

nal parenting plan designated Ms. Tettaton as the children's primary custodian. Mr. Abel was ordered to pay $500 per month child support. Ms. Tettaton was ordered not to remove the children from the state without prior court approval.

In January 1992, the court approved a move by Ms. Tettaton and the children to Helena, Montana, to pursue her career in the optical department of Shopko Stores. In November 1992, Ms. Tettaton filed a petition in the Walla Walla County Superior Court for modification of child support. Using a Washington child support worksheet, Ms. Tettaton calculated Mr. Abel's support obligation to be $563.16. Mr. Abel filed a Montana child support worksheet, calculating his support obligation to be $340.01. In February 1993, the court entered an amended parenting plan and order of child support. The court used the Montana worksheet and set Mr. Abel's support payments at $458 a month with an increase to $483 a month in January 1994.

The court found:

3. That the Washington State Child Support Schedules are based in part upon economic data for the State of Washington.

4. That given the mother relocated the children in her primary care to Helena, Montana, it is appropriate for the Montana State Child Support Schedules to apply given that Montana is the State of the children's residence and *the Montana State Schedules are based upon the income of the parties and the economic need of the children in Montana.*

The court is deviating to the amount provided for support by Montana law.

(Italics ours.)

Ms. Tettaton unsuccessfully moved for reconsideration on the ground it was error for the court to use the Montana child support schedule. She appeals, assigning error to the above findings.

First, Ms. Tettaton contends Mr. Abel did not properly plead and prove Montana law. She points out Mr. Abel simply filed a completed Montana support worksheet, without citation to underlying Montana statutes. Ms. Tettaton's argument is unpersuasive because it is based upon sections of CR 9 and CR 44.1 which govern pleading and proof of the

law of a jurisdiction *other than* a state, such as Montana. CR 9(k)(2); CR 44.1(c).

▮ The sections pertinent here are CR 9(k)(1) and CR 44.1(b). CR 9(k)(1) requires only that a person intending to raise an issue of the law of another state allege facts showing that law is applicable. CR 44.1(b) provides: "The law of a state, territory, or other jurisdiction of the United States shall be determined as provided in RCW 5.24." Under RCW 5.24.010, judicial notice is given to the laws of other states. Courts are not *required* to take judicial notice of the law of another state if the party relying on it has not called the court's attention to pertinent decisions or statutes. *State v. Jackovick*, 56 Wn.2d 915, 918, 355 P.2d 976 (1960), *cert. denied*, 375 U.S. 854 (1963), *overruled on other grounds by State v. Ringer*, 100 Wn.2d 686, 674 P.2d 1240 (1983). However, the "court may, on its own motion, inform itself of such foreign law". *Jackovick*, at 918-19.

We hold Mr. Abel complied with the pleading requirements of CR 9(k)(1) by filing the Montana worksheet and arguing Montana law applied, based upon the children's residency. Under RCW 5.24.010, we take judicial notice of Mont. Code Ann. § 40-5-209 (1993), which provides the statutory authorization for the Montana support guidelines, and Mont. Code Ann. §§ 40-4-204(2) and 40-6-116(5), which list factors for consideration in setting the guidelines. We therefore reject Ms. Tettaton's complaint of procedural error.

Second, Ms. Tettaton asserts the trial court erred when it used Montana law to calculate support. We agree with her for two reasons: (1) RCW 26.19.035(1) directs the courts of this state to apply the Washington child support schedule in child support proceedings, and (2) general choice of law principles weigh in favor of applying Washington law in the circumstances present here.

▮ ▮ Restatement (Second) of Conflict of Laws § 6(1) (1971) provides that "[a] court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law." Washington has such a statutory directive. RCW 26.19.035(1) reads: "The child support schedule *shall*

be applied: . . . (c) In all proceedings in which child support is determined or modified". (Italics ours.)

Mr. Abel relies upon RCW 26.19.075 which sets forth a nonexclusive list of reasons for deviating from the Washington support schedule. He contends the court properly deviated from the Washington schedule, which is based in part upon Washington economic data, by taking into account the children's cost of living in Montana. *See* RCW 26.19.001(1). However, neither the Montana worksheet nor the underlying Montana statutes indicate the worksheet is based upon Montana economic data. Consequently, the trial court erred when it held the Montana schedule was "based upon . . . the economic need of the children in Montana". Application of Montana law does not serve the purpose Mr. Abel asserts.

■ Even if we did not interpret RCW 26.19.035(1) as a statutory directive to the courts of this state to use Washington's support schedule in modification proceedings, choice of law principles support application of Washington law. The Restatement's section 6(2) lists the following principles for courts to consider in determining the applicable law:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

*In re Marriage of Hodges*, 415 N.W.2d 62 (Minn. Ct. App. 1987) applied similar criteria in a support modification case.

Here, application of Washington law furthers this state's policies (1) to increase the adequacy of support orders, and the equity of such orders by providing for comparable orders in similar circumstances, and (2) to reduce the adversarial nature of such proceedings. *See* RCW 26.19.001. The parties' reasonable expectations,[1] certainty and predictability of

---

[1] We note that the parties' property settlement agreement set venue in Walla Walla County. While this modification action does not concern the property settle-

results, as well as ease in determining the law to be applied, are also served by use of the Washington schedule by Washington courts. Montana's interest in securing adequate support for Montana children is not subverted because the Washington schedule provides for more rather than less money for Mr. Abel's dependents.[2] We have already noted that Mr. Abel's assertion the Montana schedule reflects Montana's cost of living is not supported by Montana law. In sum, consideration of the Restatement's choice of law principles weighs heavily in favor of applying Washington law.

Accordingly, we reverse the order of the Superior Court setting Mr. Abel's support obligation, and remand for entry of an order based upon the Washington child support schedule.

■ Ms. Tettaton requests fees on appeal, pursuant to RCW 26.09.140. *See also In re Marriage of Oblizalo*, 54 Wn. App. 800, 776 P.2d 166 (1989). However, she has not complied with RAP 18.1(c). That rule provides that where the applicable law requires the court to consider the financial resources of the parties in making a fee award, the person seeking fees must file an affidavit of need 10 days prior to oral argument. Ms. Tettaton has not filed an affidavit. We therefore deny her request for fees on appeal.

Reversed.

SWEENEY and SCHULTHEIS, JJ., concur.

---

ment, the agreement is evidence of Mr. Abel's intent that subsequent proceedings would take place in the same county as the dissolution.

[2]This fact distinguishes Mr. Abel's situation from that of the parties in *Hodges*. There, the parties divorced in Indiana, but both lived in Minnesota at the time of the wife's petition for increased maintenance. Indiana law did not allow modification of maintenance orders. The Minnesota court held that advancement of its state's interest was determinative. Ensuring adequate support payments to its residents furthered the State's interest in keeping individuals off governmental assistance. As noted above, no similar Montana interest is at stake, given the amount of support provided in the Washington schedule.