[No. 4568–II. Division Two. June 30, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. DANIEL JAMES DAVIS, *Appellant*.

*Raymond H. Thoenig* and *Mark Leemon* of *Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Mary K. Barbieri, Deputy,* for respondent.

REED, C.J.—Defendant Daniel James Davis appeals his conviction for first degree theft. We affirm.

During September and October of 1978, King County police were investigating fraudulent credit purchases in the name of "Paul Crain" at Sears, Roebuck and Company and the Bon Marche. The investigation focused on two males whom store personnel had described to the police. On October 5, two men matching the descriptions given the police, and later identified as Ronald Davis and Daniel Davis, attempted to exchange a "Galoob" remote control toy car at the Northgate Bon Marche. Prior to that date, such a toy had been charged to an account in the name of "Paul Crain." Because the salesclerk did not know how to make the exchange, the two suspects were told to return the next day.

The next day at approximately 5:30 p.m., the men did return. A security officer observed them leave the store and go to a car in the parking lot, remove the "Galoob" and return to the store. At this point security personnel at the Bon Marche telephoned Detective Clint Olson, who was in charge of the investigation. Olson advised the security personnel to have the Seattle Police Department detain the suspects until he arrived. En route to the store Olson picked up Thomas Tumblin, a security officer from Sears who was interested in the investigation. When Olson and Tumblin arrived at approximately 6:30 p.m., they learned the suspects had been taken by the Seattle police to a nearby precinct. Olson called the precinct and arranged to have the suspects taken to the King County jail.

The security officer who had observed the suspects then

led Olson and Tumblin to the suspects' car, a 1968 Pontiac convertible. The car was missing its door handles, door locks, window cranks, and trunk lock. Tumblin entered the car and found in the glove compartment a registration in the name of "Ralph Emrich." Tumblin then opened the trunk, where both he and Olson observed numerous items of merchandise. At this point Olson decided to impound the car for safekeeping. His decision was based on four factors: (1) the car was in a large parking lot and could not be secured; (2) the car's occupants had been arrested and would be in jail over the weekend; (3) the car contained numerous items of merchandise; and (4) it was not clear who owned the car. Olson then made a brief inventory search but left the car unattended in order to process the suspects at the King County jail.

Approximately 5 to 6 hours later, Olson returned to complete the impoundment. During a complete inventory search of the car Olson seized numerous items of identification and credit card applications in various names. Subsequent searches of the suspects' residence and the car pursuant to search warrants uncovered additional evidence of credit card fraud.

Defendant was charged with first degree theft. He moved to suppress all evidence seized. The trial court denied the motion, holding, *inter alia,* that the inventory search of the car was part of a valid impoundment. Apparently in order to preserve his right to appeal the ruling on the suppression motion, defendant then agreed to submit the issue of guilt to the trial court on the basis of a stipulated set of facts.[1]

---

[1]The entirety of the oral stipulation is as follows:

Ms. Barbieri [prosecutor]: . . . The State would present evidence from custodians of records of the Bon Marche, J. C. Penney & Company, and Frederick & Nelson, that applications were made at those businesses for accounts, at the Bon Marche under the name of Robert E. Conner, and under the name James F. Downing . . . at J. C. Penney they were made under the name of Robert E. Conner, Frederick & Nelson under the name of Robert E. Conner.

Custodians of documents at those stores will present charge slips signed in those respective names, indicating that merchandise was charged in the

Defendant was found guilty and findings of fact and conclusions of law were entered. Defendant appeals.

■■ Defendant's first assignment of error is that the State failed to introduce in the "trial by stipulation" any evidence of intent, an essential element of first degree theft. The trial court, however, specifically found that

[t]he defendant Daniel James Davis did intend to deprive the Bon Marche, J. C. Penney Company, and Frederick & Nelson of the merchandise.

Defendant has not assigned error to this finding; conse-

---

amount of $1,531 at the Bon, $149.80 at J. C. Penney, and $161.90 at Frederick & Nelson, for a total of $1800.

Personnel from the Washington State Crime Lab Questioned Documents Section would testify that the applications and the signatures on the charge slips were done by the same person who signed the name of Daniel Davis in the jail on his appearance on the 3:00 o'clock calendar, and would also appear to be the same signatures as those on the various drivers' licenses and identifications that bear Daniel Davis' picture, but another name, that were found in the suspect vehicle.

That is basically the summary of the State's evidence.

Mr. Levy [defense counsel]: Would the stipulation include the fact that the name, James F. Downing, was found in the suspect vehicle?

Ms. Barbieri: It was either found in the suspect vehicle or in the house on the search warrant that was based on the data found in the suspect vehicle. I will stipulate that those names were both obtained pursuant to either found in the vehicle,—either the names were found there, or information that supports a search warrant was found there.

We wish to express our concern to counsel for both parties over the adequacy of this stipulation. We recognize that such a stipulation serves a legitimate purpose when the only real issue in a case is decided in a suppression hearing. By agreeing to a trial by stipulation the defendant preserves his or her right to appeal that issue without the necessity of a full-blown trial. This obviously promotes a policy of judicial economy.

The stipulation entered into here, however, has hindered our disposition of this appeal, and thus has frustrated to some extent that policy. Despite the closing comments of Mr. Levy and Ms. Barbieri, we have had a great deal of difficulty in ascertaining from the record what specific evidence seized during the initial searches of the vehicle was used to convict the defendant. Clearly, if nothing seized was used to convict defendant, the entire issue of the legality of the search would be moot. Because, however, the parties clearly attempted to preserve this issue and our reading of the record suggests that the State learned of the James Downing account only because of something discovered during the renewed search, we have discussed this issue in the body of our opinion. We would hope, however, that in the future greater care will be given to making an adequate record to facilitate orderly review of such issues.

quently, it becomes an established fact. *State v. Baker,* 1 Wn. App. 420, 462 P.2d 254 (1969). Further, even if considered, defendant's contention is without merit, as the trial court reasonably could have inferred the requisite intent from the false representations of defendant contained in the stipulation. *State v. Peterson,* 190 Wash. 668, 70 P.2d 306 (1937); *State v. Black,* 163 Wash. 237, 1 P.2d 206 (1931).

Alternatively, defendant argues that a "trial by stipulation" is tantamount to a guilty plea and thus requires the procedural safeguards of CrR 4.2, which deals with the acceptance of guilty pleas. This argument was recently rejected by Division One of this court. *See State v. Wiley,* 26 Wn. App. 422, 613 P.2d 549 (1980). We also reject it. As Division One noted, a trial by stipulation is functionally different from a guilty plea. *Wiley,* 26 Wn. App. at 425. A guilty plea is itself a conviction. *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). With a trial by stipulation, however, the defendant does not stipulate to his guilt; the trial court must make that determination. Further, the very fact that defendant's first assignment of error seeks to challenge the legal sufficiency of the "trial by stipulation" emphasizes the distinction between a guilty plea and a stipulated trial. Thus, because the stipulated trial was not equivalent to a guilty plea, there was no need to comply with CrR 4.2.

Defendant's final argument, and the principal issue in this appeal, is that the trial court erred in denying his motion to suppress the evidence seized during the search of the vehicle. The trial court upheld the search as incident to a valid impoundment. Under the recent Supreme Court decision of *State v. Houser,* 95 Wn.2d 143, 622 P.2d 1218 (1980), however, we do not believe the search can be justified under the impoundment theory. We do believe, however, that the search was permissible under the so-called "automobile exception" to the warrant requirement of the

Fourth Amendment.[2]

Initially, we note that a distinction must be drawn between an "impoundment" of a vehicle and a search and/or seizure of a vehicle for incriminating evidence. Of course, an impoundment, because it involves taking a vehicle into exclusive custody, is a "seizure" in the literal sense of that word. For purposes of the Fourth Amendment, however, the concepts are distinct. The term "impoundment" refers to the taking of an object (usually a vehicle) into custody for some valid reason wholly apart from any purpose to search that object for incriminating matter. *See Cady v. Dombrowski,* 413 U.S. 433, 441, 37 L. Ed. 2d 706, 93 S. Ct. 2523 (1973). The purpose of an inventory of the contents of a vehicle conducted pursuant to a valid impoundment, then, is not to search for incriminating evidence but to protect the owner's property while it remains in police custody, to protect the police against claims of lost or stolen property, and to protect the police from potential danger. *South Dakota v. Opperman,* 428 U.S. 364, 369, 49 L. Ed. 2d 1000, 96 S. Ct. 3092 (1976).[3] Thus, contraband or incriminating evidence found during a true inventory is discovered through inadvertence. *See State v. Montague,* 73 Wn.2d 381, 438 P.2d 571 (1968); *State v. Wallen,* 185 Neb. 44, 173 N.W.2d 372 (1970). *See generally The Inventory Search of an Impounded Vehicle,* 48 Chi.–Kent L. Rev. 48 (1971). On the other hand, when the police have probable cause to believe a vehicle, which is not itself evidence of a crime, contains contraband or incriminating evidence and "exigent circumstances" exist, the vehicle may be searched, *Carroll v. United States,* 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280,

---

[2]We do not hesitate to explore alternative theories to support the trial court's ruling, as we may sustain the trial court's ruling on any theory, even one not argued by the parties. *See State v. Ellis,* 21 Wn. App. 123, 584 P.2d 428 (1978); *State v. Berkins,* 2 Wn. App. 910, 471 P.2d 131 (1970). *See also United States v. Ochs,* 595 F.2d 1247 (2d Cir. 1979).

[3]Indeed, it remains unclear whether an impoundment inventory constitutes a search for purposes of the Fourth Amendment. *South Dakota v. Opperman,* 428 U.S. at 371 n.6.

39 A.L.R. 790 (1924), or seized and searched. *Chambers v. Maroney,* 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970). In this type of search, of course, the avowed purpose is to unearth and seize any incriminating matter.

With these general principles in mind, we turn to the issue of when impoundment is proper following an arrest. In *Houser,* 95 Wn.2d at 153, the Supreme Court held that

> It is unreasonable to impound a citizen's vehicle following his or her arrest when there is no probable cause to seize the car and where a reasonable alternative to impoundment exists.

As we read *Houser,* then, impoundment of a vehicle following an arrest is proper only if at least one of the following situations is present: (1) probable cause exists that the vehicle is stolen; (2) probable cause exists that the vehicle was used in the commission of a felony and its retention as evidence is necessary, *see State v. Singleton,* 9 Wn. App. 327, 511 P.2d 1396 (1973);[4] or (3) an impoundment is necessary to safeguard the vehicle and no reasonable alternative to impoundment exists.

Applied to the facts of this case, none of these situations exists. The State has never asserted that Detective Olson had probable cause to believe the 1968 Pontiac was stolen.

---

[4]The court in *Houser* stated that

impoundment of a vehicle will be considered reasonable if an officer has probable cause to believe that it was stolen or that it was being used in the commission of a felony.

*Houser,* 95 Wn.2d at 149, citing *Singleton* and *State v. Glasper,* 84 Wn.2d 17, 523 P.2d 937 (1974). *Singleton* clearly adds the qualification that when a vehicle is impounded because it was used in a felony, its retention as evidence must be necessary. *Singleton,* 9 Wn. App. at 332. *Glasper* stands for the proposition that a vehicle may be impounded when probable cause exists that it was used in the commission of a felony and that the vehicle contains contraband. *Glasper,* 84 Wn.2d at 20–22. The court in *Glasper,* however, clearly analyzed that case under the doctrine of the so-called "automobile exception" to the warrant requirement of the Fourth Amendment, which requires the presence of exigent circumstances. See discussion, *infra.* Consequently, we do not believe that, absent exigent circumstances, mere probable cause to believe a vehicle is being used in the commission of a felony and contains contraband justifies an impoundment.

Nor can the impoundment be justified on the theory that it was used in the commission of a felony, as there is no indication that it was necessary to retain the car itself as evidence. Finally, impoundment cannot be justified on the ground that it was necessary to safeguard the vehicle, even assuming that the police had a justifiable interest in protecting the car.[5] Detective Olson admitted that he did not explore any reasonable alternatives to impoundment. *See State v. Hardman,* 17 Wn. App. 910, 567 P.2d 238 (1977). Thus there existed no valid reason to impound the car.

■ Although we do not believe that the search can be upheld on a theory of impoundment, we do believe the search which produced the incriminating evidence was justified under *Carroll* and its progeny. As noted above, under this exception to the warrant requirement of the Fourth Amendment, an automobile may be searched if there is probable cause to believe the car contains contraband or evidence and exigent circumstances exist. *See Carroll v. United States, supra; Chambers v. Maroney, supra; Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971); *Arkansas v. Sanders,* 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979). *See generally* 2 W. LaFave, *Search and Seizure* § 7.2 (1978); Moylen, *The Automobile Exception: What It Is and What It Is Not—A Rationale in Search of a Clearer Label,* 27 Mercer L. Rev. 987 (1976). The rationale for this exception is that the inherent mobility of an automobile makes enforcement of the warrant requirement impractical and that there is a diminished expectation of privacy in one's automobile. *Houser,* 95 Wn.2d at 149.

Under the facts of this case we believe both probable cause to search and exigent circumstances existed. When Olson first approached the car he had received reliable

---

[5]It is far from clear to us that merely because the suspects, who were arrested in the department store, had arrived by car, the police have any obligation to protect the car. Surely the State does not contend that somehow the police may be responsible for the vehicle.

information that the car had been used to transport merchandise obtained fraudulently.[6] He was also aware that other merchandise purchased through the same account as the "Galoob" was unaccounted for. Under these circumstances Olson had probable cause to believe the car contained contraband and/or evidence of a crime. *See Chambers v. Maroney, supra; State v. Rose,* 17 Wn. App. 801, 565 P.2d 1206 (1977); *State v. Morsette,* 7 Wn. App. 783, 502 P.2d 1234 (1972). Further, exigent circumstances clearly existed. The car had no locks or handles and was openly accessible to anyone. As Olson found it, the car presented an inviting target and was susceptible to being moved quickly or having evidence within the car removed. *See United States v. Cohn,* 472 F.2d 290 (9th Cir. 1973).

Our analysis is not altered by the fact that Olson had to interrupt his search to process the suspects and thus did not complete the warrantless search until later that evening, when the incriminating evidence was discovered.[7] In *Cardwell v. Lewis,* 417 U.S. 583, 41 L. Ed. 2d 325, 94 S. Ct. 2464 (1974), the Supreme Court held

> [a]ssuming that probable cause previously existed, we know of no case or principle that suggests that the right to search on probable cause and the reasonableness of seizing a car under exigent circumstances are foreclosed if a warrant was not obtained at the first practicable moment. Exigent circumstances with regard to vehicles are not limited to situations where probable cause is unforeseeable and arises only at the time of arrest. The exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitat-

---

[6]Olson's information came from Bon Marche personnel, who had observed the suspects taking the "Galoob" from the Pontiac. There can be no real dispute that Olson could justifiably rely on this information. *See* 1 W. LaFave, *Search and Seizure* § 3.4 (1978).

[7]While the record is somewhat conflicting as to what evidence was seized and when it was seized, the trial court's findings clearly indicate that it was not until the later search that the incriminating evidence was found. These findings have not been challenged.

ing prompt police action.

(Footnote and citation omitted.) *Cardwell,* 417 U.S. at 595–96. *See also People v. Paul,* 78 Cal. App. 3d 32, 144 Cal. Rptr. 431 (1978); *Johnson v. State,* 8 Md. App. 28, 257 A.2d 756 (1969). When Olson returned to the car, the exigent circumstances that had existed earlier continued to exist; indeed, given the lateness of the hour, greater need for prompt action existed. Further, because Olson had the right to search the car without a warrant when he first approached it, we fail to see how the defendant has been constitutionally harmed when that initial search is interrupted but later continued without a warrant.[8] *See Chambers v. Maroney, supra.* Consequently, the search of defendant's car was constitutionally permissible.

Judgment affirmed.

PEARSON and PETRIE, JJ., concur.

Reconsideration denied August 18, 1981.

Review denied by Supreme Court November 6, 1981.

---

[8]Nor do we believe that the fact that Olson was acting under a theory of impoundment requires a different result. In evaluating alleged violations of the Fourth Amendment, our analysis must focus on "an objective assessment of the officer's actions", not his subjective motivation. *Scott v. United States,* 436 U.S. 128, 136, 56 L. Ed. 2d 168, 98 S. Ct. 1717 (1978).