[No. 7158-4-II. Division Two. March 28, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. STEVEN T. BURGESS, *Appellant.*

*Darrell E. Lee* and *Lee & Schauermann,* for appellant (appointed counsel for appeal).

*Arthur D. Curtis, Prosecuting Attorney,* and *Mark E. Beam, Deputy,* for respondent.

ALEXANDER, J.—The defendant appeals his conviction for burglary on grounds that the trial judge erred in denying his motion to suppress evidence of warrantless searches of his person and vehicle and in denying his motion to exclude evidence of prior crimes. We affirm.

On February 12, 1983, Clark County Deputy Sheriff Buckner responded to a silent alarm at the Hearthwood Animal Clinic in Vancouver at about 1:15 a.m. As the deputy approached the clinic on foot, he saw a person walk out of the east side of the clinic. He shined his light on the person and told him to stop. The person glanced at the deputy, took a bag from under his jacket, and began running in an easterly direction. The deputy observed the suspect to be a white male, around 19 or 20 years old, medium build and height, short brown hair, and no facial hair. He was wearing a letterman's jacket with a dark body and light-colored sleeves. The deputy watched as the suspect threw the bag over a cyclone fence. The suspect then went over it himself and headed toward a vacant field. At that point, the deputy lost sight of him. The deputy then broadcast a description of the suspect over his police radio. He later went over the cyclone fence himself and found a plastic wastepaper basket liner, which contained medicine from the clinic.

Shortly after the burglar alarm went off, other officers from the sheriff's department became involved in the investigation. Those officers discovered a Toyota pickup parked about a block from the clinic on the other side of the vacant field. They ran a registration check on the pickup and discovered that Steven Burgess, the defendant, owned the pickup. The officers also received information that Burgess had burglarized the same animal clinic on a previous occasion. In order to secure the truck while they continued their investigation, the officers flattened its tires. Thereafter the officers focused their investigation on Burgess. Later that evening, another investigating officer found a gray piece of nylon cloth with cotton backing attached to a barbed wire fence in the same area.

About 2 hours after the officers located the truck, Deputy Atkins saw a person matching the suspect's description within blocks of the clinic, but lost sight of him as the person went over some fences. A few minutes later Deputy Christensen spotted a person matching the same descrip-

tion on a street nearby at about 3:12 a.m. Deputy Christensen radioed two backup officers to apprehend the suspect. The officers ordered the defendant to stop, put him on the ground, and handcuffed him. At once, Deputy Christensen told the defendant that he was under arrest for burglary. The defendant then began making abusive remarks and indicated that he was going to sue for false arrest. He explained that he was merely walking home because his truck had broken down. Within a minute or so, Deputy Atkins arrived on the scene. Atkins had met Burgess before and recognized him. After the officers had taken Burgess to the county jail, they removed his jacket. Deputy Buckner, who was aware of the piece of cloth that had been found on the fence, recognized that Burgess's jacket had a tear on it that perfectly matched the piece of cloth that had been found on the barbed wire fence. The officers retained the jacket as evidence.

About half an hour after the arrest, Officer Christensen conducted a search of the defendant's pickup and had it impounded[1] by a towing company. Deputy Buckner testified that although the truck was legally parked, it was in an area that was "isolated" and "prone to vandalism." However, none of the officers asked the defendant what he wanted to do with his truck or whether anyone else was available to pick up the truck for him. The officers had called Burgess's home, but no one answered. Deputy Christensen's search of the truck produced a hammer which had been broken off at the head, a beebee pistol, a rubber glove, and some dry clothing.

A later investigation of the clinic revealed that two windows contained small beebee holes and that the entry was gained by breaking the third window. The next day the veterinarian who owned the clinic found two small beebees

---

[1] Deputy Buckner, who instructed Christensen to impound and search the vehicle, gave two reasons for the search. He testified that the car was impounded for safekeeping and searched incident thereto. He also said it was searched because it was used in the commission of a crime.

on the clinic floor near one of the broken windows.

At the pretrial suppression hearing, the defendant moved to suppress all the evidence discovered pursuant to his arrest and the search of the truck. The defendant also moved to exclude evidence of two prior burglary convictions, which the State indicated it intended to use in its case in chief as well as for impeachment purposes. The trial judge denied both motions. The case proceeded to trial before the court, and the defendant was found guilty of burglary in the second degree.

We first examine whether the trial judge properly denied the motion to suppress the evidence gained in the warrantless arrest of Burgess. The defendant argues that the deputies did not have probable cause to arrest him and, therefore, the trial judge should have suppressed the evidence gained in his arrest, his jacket, as "fruit of the poisonous tree."

■ Probable cause exists to make an arrest without a warrant when the facts and information within the officer's knowledge are sufficient to "warrant a man of reasonable caution in a belief that an offense has been . . . committed." *State v. Gluck*, 83 Wn.2d 424, 426–27, 518 P.2d 703 (1974). Probable cause exists when an officer makes an arrest based on a physical description of the defendant and when the officer finds that the defendant is in close proximity in time and distance to the crime site. *State v. Byrd*, 25 Wn. App. 282, 607 P.2d 321 (1980).

Here, the officers tracked the suspect from the crime site based on Deputy Buckner's detailed, eyewitness description. The officers had spotted the suspect—who fit the defendant's description—several times before apprehending him. The investigation had focused on Burgess, in particular, after the officers connected Burgess with the abandoned truck. Under these circumstances, the arresting officers had probable cause to arrest Burgess. Once the arrest was made, the officers took Burgess to the county jail for booking. Officers may inventory a defendant's personal belongings as part of the standard booking process. *See State v. Garcia,*

35 Wn. App. 174, 177, 665 P.2d 1381 (1983). Here, during the booking procedure, the officers first noticed the tear on the outside of Burgess's jacket.

■ Under the "plain view" exception to the warrant requirement, a warrantless seizure is permissible if officers have a prior justification for the intrusion; if they discover incriminating evidence inadvertently; and if they have immediate knowledge that they have evidence before them. *State v. Daugherty,* 94 Wn.2d 263, 267, 616 P.2d 649 (1980), *cert. denied,* 450 U.S. 958 (1981).

Here, the officers were in a lawful place conducting the standard booking procedures after a lawful arrest. As they removed Burgess's jacket, the officers inadvertently noticed the tear on the outside of the jacket that perfectly matched the piece of cloth found on the fence during the earlier investigation. Deputy Buckner was aware of the cloth that had been found on the fence, and he therefore had immediate knowledge that the jacket constituted evidence of the burglary. Under these circumstances, the officers properly seized the incriminating evidence. The trial judge properly denied the defendant's motion to suppress evidence obtained in search of the defendant's person.

■ The defendant argues that the officers made an unreasonable "seizure" by deflating his truck tires. We believe that the detention of the truck in this manner was valid as a reasonably limited intrusion into Burgess's right "to be secure" in his "effects" protected by the Fourth Amendment against "unreasonable searches and seizures." Warrantless seizures may be justified where police officers are faced with emergencies or exigencies which do not permit reasonable time and delay for a judicial officer to evaluate and act upon an application for a warrant. *See State v. Smith,* 88 Wn.2d 127, 135, 559 P.2d 970, *cert. denied,* 434 U.S. 876, 54 L. Ed. 2d 155, 98 S. Ct. 226 (1977). Here, the officers deflated the truck tires during the time when several of them were in pursuit of a burglary suspect they believed was Burgess. The deflation of his truck tires, unaccompanied by any exploratory search at that time, was

reasonably restricted in time and place and necessary to prevent the suspect from fleeing the scene of the burglary. If the officers had not deflated the tires, they would have been faced with the possibility that Burgess would remove the truck, taking its contents with him. The officers did not obtain any evidence from this seizure. The search of the automobile did not occur until they possessed additional incriminating information, justifying a more extensive intrusion. *See also United States v. Van Leeuwen,* 397 U.S. 249, 25 L. Ed. 2d 282, 90 S. Ct. 1029 (1970) (delaying packages for 1 day during an investigation was reasonable, where postal services employees and police suspected the sender of illegal coin–importing activity); *State v. Darack,* 66 N.C. App. 608, 312 S.E.2d 202 (1984) (brief, 3–hour, detention of an airplane while the officers were pursuing a legitimate limited course of investigation was proper, where the officers had a "reasonable, articulable suspicion, premised on objective facts" that the airplane contained contraband or evidence of a crime).

The defendant also asserts that evidence seized from the truck was inadmissible because the warrantless "inventory" search of his vehicle was improper. Defendant emphasizes that the officers improperly neglected to ask him what he wanted to do with the truck after he was arrested. At trial, the judge ruled that the officers had properly conducted an inventory search of the vehicle and that they had properly impounded it in order to protect it from vandalism. The judge reasoned that because the defendant was uncooperative, he probably would not have responded if the officers had asked him what to do with the truck.

█ We agree with the defendant that the search of his truck did not constitute a proper "inventory search." "The purpose of an inventory search is to protect the police from lawsuits arising from mishandling of personal property . . . [A] defendant may reject this protection, preferring to take the chance that no loss will occur." *State v. Williams,* 102 Wn.2d 733, 743, 689 P.2d 1065 (1984). The investigating officers, therefore, have an affirmative duty to explore rea-

sonable alternatives to impoundment. *See State v. Houser,* 95 Wn.2d 143, 153, 622 P.2d 1218 (1980). The fact that the defendant was verbally uncooperative should not deprive him of the right to choose alternatives to impoundment of his property. Because the officers failed to ask Burgess what he wanted them to do with his truck, the impoundment and inventory search conducted incident thereto was improper.

However, this court should not hesitate to explore alternative theories to support a trial court's decision. *See State v. Davis,* 29 Wn. App. 691, 697 n.2, 630 P.2d 938, 17 A.L.R.4th 53, *review denied,* 96 Wn.2d 1013 (1981). We uphold the search on an alternative ground, concluding that the officers properly searched Burgess's truck under the "automobile exception" to the warrant requirement. An automobile may be searched if there is probable cause to believe the car contains contraband or evidence and exigent circumstances exist. *State v. Davis,* 29 Wn. App. 691, 699, 630 P.2d 938, 17 A.L.R.4th 53, *review denied,* 96 Wn.2d 1013 (1981). The premise for the automobile exception is that the inherent mobility of the automobile makes enforcement of the warrant requirement impractical and that there is a diminished expectation of privacy in one's automobile. *State v. Davis, supra.*

We are not unmindful that our Washington Supreme Court has recently interpreted our State Constitution, article 1, section 7, to be more protective of a defendant's rights in some instances than is the fourth amendment to the United States Constitution.[2] The court in *State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240 (1983) held that officers must show that exigent circumstances exist making it

---

[2]Article 7, section 7 provides:

"No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

The fourth amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

impractical for police to obtain a search warrant prior to a search of an automobile. In *Ringer,* the defendant had already been arrested and taken to the police station. His van was lawfully parked, immobile, and did not impede traffic or threaten public safety or convenience. *Ringer,* 100 Wn.2d at 703. The search of the van was held invalid because the officers failed to show exigent circumstances existed that made it impractical to obtain a search warrant by normal or telephonic means. *Ringer,* 100 Wn.2d at 703. We hold, however, that *State v. Ringer* does not apply retroactively to this case, and we uphold the search based on case law existing before *Ringer.*

■■ We are aware that in *United States v. Johnson,* 457 U.S. 537, 73 L. Ed. 2d 202, 102 S. Ct. 2579 (1982), the Court held that a decision construing the Fourth Amendment should generally be applied to all convictions not yet final at the time the decision was rendered. However, as noted in *State v. Jordan,* 39 Wn. App. 530, 543, 694 P.2d 47 (1985), citing *Johnson,* 457 U.S. at 548–51, the traditional retroactivity analysis continues to be controlling in three categories of cases:

> (1) cases in which the Court merely applied settled precedents to new and different factual situations, (2) cases in which the Court declared a rule of criminal procedure to be a "clear break with the past", and (3) cases in which the Court ruled that the trial court lacked authority to convict or punish the criminal defendant in the first instance.

In *Jordan,* the court held, in a case concerning a search incident to arrest, that *Ringer* constituted a clear break with the past. 39 Wn. App. at 545. We also find that *Ringer*'s analysis of the automobile exception adopts a more restrictive interpretation of "exigency" and therefore constitutes a "clear break with the past" and that the traditional retroactivity analysis should therefore apply. In making that analysis, we have considered the following factors set forth in *Stovall v. Denno,* 388 U.S. 293, 297, 18 L. Ed. 2d 1199, 87 S. Ct. 1967 (1967) for determining retroac-

tivity: (a) the purpose to be served by new standards, (b) the extent of the reliance by law enforcement authorities on old standards, (c) the effect on the administration of justice of a retroactive application of the new standards.

We find that the purpose of *Ringer's* restrictive interpretation of "exigency" is to afford the defendant the maximum possible protection from unreasonable searches and seizures under the Washington State Constitution. While the *Ringer* holding and the "exclusionary rule" serve as an effective deterrent to improper police actions in searches and seizures, a police officer who has not anticipated a future decision cannot be said to be deterred. Police officers cannot be expected to conform to a rule that they do not know exists. Under the circumstances of this case, law enforcement personnel should have the right to rely on previous Washington decisions consistent with the broader standards of the Fourth Amendment as interpreted by the United States Supreme Court and the Washington Supreme Court prior to *Ringer. See State v. Donohoe,* 39 Wn. App. 778, 782 n.5, 695 P.2d 150, *review denied,* 103 Wn.2d 1032 (1985).

Further, we believe a retroactive application of *Ringer* in this case would have a disruptive effect on the administration of justice. Undoubtedly numerous convictions have been obtained by evidence seized under the pre–*Ringer* interpretations of the automobile exception. In *Jordan,* 39 Wn. App. at 546, the court reasoned that the "investigation, and possible retrial, of these cases would be difficult and time consuming." We agree and hold that *Ringer* should not apply retroactively to this case.

█ Having determined that *Ringer* is not retroactive, we believe justification for the search of Burgess's truck can be found in federal and Washington cases existing before *Ringer.* Under the automobile exception to the warrant requirement, a search could be deemed proper even when the defendant had already been arrested and could therefore not move the vehicle himself. *See, e.g., Chambers v. Maroney,* 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975

(1970); *State v. Pate,* 12 Wn. App. 237, 241–42, 529 P.2d 875 (1974). The rationale was that even though a defendant has been arrested and cannot move the car himself, the vehicle is still mobile, and the police have no way of knowing that there is not an accomplice who can move the car. *Chambers,* 399 U.S. at 51; *Pate,* 12 Wn. App. at 241–42.

At the time the officers made the search of Burgess's truck, they did not know whether Burgess had an accomplice. An accomplice could have taken evidence from the truck, reinflated the truck tires, or moved the vehicle with deflated tires from the area. In addition, Deputy Buckner had testified that the area where Burgess's truck was located was "very isolated and prone to vandalism" and that cars parked in this area had "windows broken out of them before in the past." We agree with the statement in *State v. Davis,* 29 Wn. App. 691, 700, 630 P.2d 938, 17 A.L.R.4th 53, *review denied,* 96 Wn.2d 1013 (1981), that "the car presented an inviting target and was susceptible to being moved quickly or having evidence within the car removed." If Burgess's truck had been moved or vandalized, the incriminating evidence linking Burgess to the crime may have been lost forever. Under these circumstances, we believe that there were sufficient exigent circumstances to justify the officers' search of Burgess's truck. We therefore hold that the trial court properly denied Burgess's motion to suppress the evidence discovered in the search of the truck.

The next issue is whether the judge properly refused to exclude evidence of two prior burglaries committed by Burgess. The State argues that the prior crimes were similar to the 1983 burglary and were properly admitted to show identity.

One prior burglary occurred in 1976. The defendant had burglarized a dental office for the purpose of taking drugs. That burglary was similar to the burglary in the present case because entry was made by breaking a window, only drugs and syringes were taken, and rubber gloves were found. The defendant had also tried to flee from police.

The trial judge found that in both the earlier burglary and the present one, the burglar had used the building's plastic wastepaper basket liner to collect the drugs.

The other prior burglary occurred in 1977 when the defendant burglarized the same animal clinic. It was additionally similar to the present burglary because the clinic was burglarized at night, and only drugs were taken. The trial judge found it significant that in the 1977 burglary the premises appeared to have been ransacked to find the drugs. Yet from the condition of the clinic in the 1983 burglary, it was apparent that the burglar knew exactly where to find the drugs without searching. Also, the burglar in the 1983 burglary appeared to know that an interior alarm existed because the burglar tested the system by shooting beebees through a window. In 1977, the defendant refused to halt when asked by police as did the burglar in 1983.

 Under ER 404(b), evidence of other crimes may not be used to show the defendant's character, but may be used for other purposes such as evidence of identity. The court must first decide whether the evidence is relevant to a material issue of the crime charged and then must balance the probative value against the prejudicial effect on the record. ER 403; *State v. Saltarelli,* 98 Wn.2d 358, 362, 655 P.2d 697 (1982); *State v. Tharp,* 96 Wn.2d 591, 597, 637 P.2d 961 (1981). The evidence should indicate that the method employed in the prior crime was so unique that the mere proof that the accused committed the prior crime creates a higher probability that the accused was the one who committed the act charged. *State v. Irving,* 24 Wn. App. 370, 374, 601 P.2d 954 (1979). Evidence that a defendant obtained information in a prior crime that aided the commission of a second crime may be relevant to the issue of the defendant's knowledge and to the issue of the identity of the perpetrator. *See State v. Anderson,* 10 Wn.2d 167, 179, 116 P.2d 346 (1941); *State v. Thompson,* 132 Wash. 124, 125, 231 P. 461 (1924). The time lapse between the prior crime and the crime charged affects the weight rather than the admissibility of the evidence. *State v. Bouchard,*

31 Wn. App. 381, 386, 639 P.2d 761, *review denied,* 97 Wn.2d 1021 (1982).

A trial judge has great latitude in determining the relevancy of the evidence and whether the evidence should be admitted. *State v. Smith,* 5 Wn. App. 237, 240, 487 P.2d 227 (1971). A trial judge's decision should be reversed only if "no reasonable person would take the view adopted by the trial court." *State v. Jones,* 26 Wn. App. 551, 553, 614 P.2d 190 (1980). Here, the trial judge balanced on the record the probative value of the prior crimes with the prejudicial effect. The judge determined that the prior crimes were probative because identity was an issue. This appears reasonable considering the fact that the defendant had denied any wrongdoing and that there were no eyewitnesses to the actual burglary. The court determined that the similarities discussed above were sufficiently probative on the issue of identity to outweigh any prejudice. We agree and hold that the trial judge did not abuse his discretion in denying the defendant's motion to exclude evidence of the prior crimes.

The defendant also argues that the trial judge erred in denying the defense motion to preclude questioning of the defendant about the prior burglary convictions for impeachment, should the defendant take the stand. The defendant appears to argue that this ruling "chilled" his right to testify.

Under ER 609(a)(1), a prior felony conviction is admissible to impeach a witness if the court determines that the probative value of admitting the evidence outweighs the prejudicial effect to the defendant. The admission of such evidence is within the sound discretion of the trial court. *State v. Pam,* 98 Wn.2d 748, 762–63, 659 P.2d 454 (1983). The court in *State v. Alexis,* 95 Wn.2d 15, 19, 621 P.2d 1269 (1980) considered these balancing factors significant: (1) the length of the defendant's criminal record; (2) the remoteness of the prior conviction; (3) the nature of the prior crime; (4) the age and circumstances of the defendant; (5) the centrality of the credibility issue;

and (6) the impeachment value of the prior crime. These factors must be considered in light of the strong prejudice against admitting a prior conviction of a crime identical to the crime charged. *Pam*, 98 Wn.2d at 761.

The trial judge considered the *Alexis* factors and determined that the defendant would suffer little additional prejudice from allowing the admission of the convictions because the trier of fact would have already heard about the burglaries in the State's case in chief. We agree. Considering the obvious lack of prejudice and the fact that the prior convictions are probative on the issue of credibility because the defendant denied involvement in the present burglary, we hold that the trial court did not err in denying the defendant's motion to exclude the prior convictions.

The defendant's conviction for burglary is affirmed.

REED, A.C.J., and PETRICH, J., concur.

Review denied by Supreme Court June 3, 1986.