[No. 19205-1-I.  Division One.  January 8, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. RODNEY THOMAS COLVIN, *Defendant,* CLEVELAND PATTERSON, *Appellant.*

*Helen A. Anderson* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Susan Noonan, Deputy,* for respondent.

PEKELIS, J.—Cleveland Patrick Patterson appeals his conviction for one count of second degree burglary. He contends that the trial court erred in admitting evidence of two prior burglaries for the purpose of proving identity. The State cross–appeals, contending that the trial court erroneously counted two prior convictions as one offense in calculating Patterson's offender score. We reverse.

I

At 1:19 a.m. on February 7, 1986, Officer Gregory Beard of the Seattle Police Department responded to a silent alarm at a Seattle tool store. Upon his arrival, Beard observed a white van parked in front of the store. When Beard shined his spotlight on the van, it immediately drove away. Beard turned on his siren and gave chase. During the chase, a large cardboard box, apparently containing merchandise from the tool store, fell from the side door of the van as it turned a corner.

At the corner of Seventh Avenue South and South Andover Street, a white male jumped from the van and fled on foot. Beard radioed this information to other officers and continued to follow the van. The driver of the van was later apprehended and identified as Rodney Colvin. The

van itself was found to contain numerous items from the tool store.

Meanwhile, at approximately 2 a.m., Officer Michael Hori and his dog Radar arrived at the corner of Seventh and Andover in response to Beard's radio dispatch. Radar performed an "area search"[1] and led Hori to a dumpster a short distance from the corner. Hori opened the top of the dumpster and found Patterson inside. Patterson was arrested and charged with one count of second degree burglary.

Before trial, Patterson moved to exclude evidence of two prior burglaries. The trial court denied the motion, finding that the three crimes were sufficiently similar that evidence of the two prior crimes was admissible under ER 404(b) to prove identity.

At trial, Officer Linda Pillo of the Mercer Island Police Department testified as to one of the two prior burglaries. Pillo stated that at 2:03 a.m. on February 16, 1981, she responded to a burglar alarm at a television store. Upon her arrival, she observed a white van parked in front of the store. The van, with two suspects inside, immediately drove away when one of the suspects saw Pillo. Pillo turned on her siren and gave chase. During the chase, one of the suspects, later identified as Patterson, threw boxes out the rear doors of the van at Pillo's patrol car. The chase eventually led to a dead end where both suspects fled on foot. Soon thereafter, Patterson was found hiding in the water of Lake Washington and was arrested.

Officer Rodney Van Lierop of the Bothell Police Department testified as to the other prior burglary. Van Lierop testified that at 3:28 a.m. on July 13, 1981, he responded to a burglar alarm at a television and appliance store. Just as he arrived, he observed a blue van leaving the store with its lights off. Van Lierop pursued the van until it came to a dead end, at which point both the driver and the passenger,

---

[1] In an "area search," the dog simply attempts to locate any individual who might be in the area. The dog is not following the scent of any specific individual.

later identified as Patterson, fled on foot. Patterson was later found hiding in some blackberry bushes and was arrested.

In the case at bar, Patterson was found guilty as charged. The trial court found that Patterson's two prior burglary convictions had been served concurrently, and that therefore they should count as one offense for the purpose of calculating Patterson's offender score. *See* RCW 9.94A-.360(5)(c). Patterson was sentenced to 12 months of confinement based on an offender score of 3 and a standard sentence range of 4 to 12 months.

## II

Patterson contends that the trial court erred in admitting evidence of the two prior burglaries. The admissibility of evidence of other crimes is governed by ER 404(b):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In order to determine whether evidence is admissible under ER 404(b), the court must first identify the proper purpose for which the evidence is to be admitted. *State v. Saltarelli*, 98 Wn.2d 358, 362, 655 P.2d 697 (1982). That purpose will be to establish some fact which is of consequence to the outcome of the action. *Saltarelli*, 98 Wn.2d at 362. Second, the evidence must be relevant; that is, it must tend to make the existence of the identified fact more or less probable. *Saltarelli*, 98 Wn.2d at 363. Only after the court has determined that the evidence is relevant can it appropriately balance the probative value of the evidence against the potential for prejudice. *Saltarelli*, 98 Wn.2d at 363.

Patterson argues that the methods employed in the three burglaries were not so distinctive or unusual that evidence of the two prior burglaries was admissible to prove identity. Our Supreme Court has adopted a "stringent test of uniqueness" in determining whether evidence of a prior

crime should be admitted to prove modus operandi and, hence, identity. *State v. Smith*, 106 Wn.2d 772, 778, 725 P.2d 951 (1986). The methods employed in both crimes must be so unique that mere proof that the accused committed the prior crime creates a "high probability" that he also committed the crime charged. *Smith*, 106 Wn.2d at 777–78 (quoting *State v. Laureano*, 101 Wn.2d 745, 764, 682 P.2d 889 (1984) and *State v. Coe*, 101 Wn.2d 772, 777, 684 P.2d 668 (1984)). Mere similarities between the crimes are not sufficient; there must be something "distinctive or unusual" about the methods employed in both crimes. *Smith*, 106 Wn.2d at 777–78 (quoting 5 R. Meisenholder, Wash. Prac. § 4, at 13 (1965)). The requirement that the methods be distinctive or unusual insures that the evidence is relevant. *Smith*, 106 Wn.2d at 778. "The greater the distinctiveness . . . the higher the probability that the defendant committed the crime.'" *Smith*, 106 Wn.2d at 778 (quoting *Coe*, 101 Wn.2d at 778).

In arguing that the prior burglaries were admissible, the State relies heavily on *State v. Burgess*, 43 Wn. App. 253, 716 P.2d 948, *review denied*, 106 Wn.2d 1004 (1986). In *Burgess*, the defendant was charged with burglarizing an animal clinic, and the trial court admitted evidence of two prior burglaries for the purpose of proving identity. This court affirmed, finding that "the similarities [between the crimes] were sufficiently probative on the issue of identity to outweigh any prejudice." *Burgess*, 43 Wn. App. at 266. There, one prior burglary, which occurred at a dental office, was similar to the crime charged in that (1) entry was made by breaking a window, (2) only drugs and syringes were taken, (3) rubber gloves were found, (4) the defendant tried to flee from the police, and (5) the burglar used the building's plastic wastebasket liner to collect the drugs. *Burgess*, 43 Wn. App. at 264–65. The other prior burglary, which occurred at the same animal clinic as the crime charged, was similar to that crime in that (1) it took place at night, (2) only drugs were taken, and (3) the burglar refused to halt when told to do so by police. *Burgess*, 43 Wn. App. at

265. The court also found it significant that the perpetrator of the crime charged evidently knew precisely where to find the drugs without searching for them and also knew of the clinic's interior alarm system. *Burgess,* 43 Wn. App. at 265.

We note first that *Burgess,* decided before *Smith,* does not appear to apply the "stringent test of uniqueness" adopted in *Smith,* 106 Wn.2d at 778. In applying the *Smith* test to the case before us, we cannot say that there is anything particularly "distinctive or unusual" about the methods employed in the three crimes. *Smith,* 106 Wn.2d at 778. Each took place in the early morning hours at a retail store. In each case, a van was used to transport stolen merchandise, and in each case the van left the scene when police arrived. The passenger, who in the two prior burglaries was identified as Patterson, left the van and fled on foot.[2] Finally, in each case a suspect was found concealed near the place where the passenger was seen to leave the van.[3] While there are clearly similarities among the three crimes, "[m]ere similarity of crimes will not justify the introduction of other criminal acts under the rule." 5 R. Meisenholder, Wash. Prac. § 4, at 13 (1965), *quoted in Smith,* 106 Wn.2d at 777. Because none of the similarities were in any way distinctive or unusual, evidence of the two prior crimes was not relevant, and its admission was error. *Smith,* 106 Wn.2d at 778–79.

### III

█ It remains to be determined whether that error requires reversal. Evidentiary errors under ER 404 are not of constitutional magnitude. *Smith,* 106 Wn.2d at 780;

---

[2]In the two prior crimes, however, the passenger did not leave the van until it came to a dead end, at which time both the driver and the passenger fled on foot.

[3]The State contends that in the crime charged, boxes were thrown from the van, as they were in one of the prior burglaries. However, the only testimony on this issue was that of Officer Beard, who stated that he saw *one* box, and that it appeared the box fell accidentally from the van because the side door had been left open.

*State v. Jackson,* 102 Wn.2d 689, 695, 689 P.2d 76 (1984). Such errors are harmless unless, within reasonable probabilities, the outcome of the trial would have been different had the error not occurred. *Smith,* 106 Wn.2d at 780; *Jackson,* 102 Wn.2d at 695; *State v. Robtoy,* 98 Wn.2d 30, 44, 653 P.2d 284 (1982). In this case, had the prior burglaries not been admitted, the evidence against Patterson would consist of the fact that about an hour after the burglary he was found in a dumpster near the place where one of the suspects got out of the van.[4] There was no other evidence connecting him to the crime. On these facts, we conclude that the outcome of the trial might well have been different had the court excluded evidence of the two prior crimes.

IV

Because Patterson's conviction must be reversed, we need not reach the issue raised in the State's cross appeal.

RINGOLD, A.C.J., and GROSSE, J., concur.

---

[4]There was also evidence, arguably favorable to Patterson, that there were taverns and often transients in the vicinity.