[No. 10345-1-II. Division Two. September 6, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. LEE ARTHUR HANSON, JR., *Appellant.*

*Mark L. Yelish* and *Crawford, McGilliard, Peterson & Yelish,* for appellant (appointed counsel for appeal).

*C. Danny Clem, Prosecuting Attorney,* and *Anthony C. Otto, Deputy,* for respondent.

ALEXANDER, J.—Lee Arthur Hanson, Jr., appeals his conviction of four counts of delivery of a controlled substance. He assigns error to the trial court's denial of his motion to dismiss the charges based on what he alleges was a violation of the "time for trial" rule, CrR 3.3. We affirm.

On April 15, 1985, the prosecuting attorney for Kitsap County filed an information in Kitsap County Superior Court charging Hanson with one count of delivery of a controlled substance, to wit: cocaine. On that same day, a warrant for Hanson's arrest issued from that court. Hanson was arrested almost a year later, March 30, 1986, in Bremerton. The information was amended on June 20, 1986, to

add three additional counts of delivery of a controlled substance. Hanson pleaded not guilty to all charges and his trial was scheduled to commence on July 1, 1986.[1]

Hanson objected to the trial date, pursuant to CrR 3.3(f) on grounds that the time for trial rule, CrR 3.3(c), had been violated. He then moved to dismiss all of the charges for the alleged rule violation.

At the hearing on his motion to dismiss, Hanson testified that at the time the initial charge was filed, he was living in an apartment above the Old Town Tavern in Silverdale. According to Hanson, his family knew where he resided. Around the last week of April 1985, Hanson was subpoenaed by the Kitsap County Prosecutor's Office as a witness in another criminal case which had been filed by the prosecutor in the Kitsap County District Court. The subpoena was sent to Hanson's parents' residence. Hanson received the subpoena from his parents.

On June 11, 1985, Hanson moved to Vancouver, Washington, notifying only his family and a few friends of his departure. Hanson testified that he did not notify the post office of a forwarding address.

Hanson responded to the district court subpoena and testified on October 23, 1985. At that time, Hanson gave a district court deputy prosecutor and the District Court his Vancouver address.

Hanson testified that his parents informed him that the police were looking for him. Hanson said that he then called the "Sheriff's Department and asked if they had a warrant out for [his] arrest, and they said, 'No.'"

The Kitsap County Prosecutor testified at the hearing that he had three deputy prosecutors who dealt specifically with district court cases. He also testified that at any one

---

[1]The record does not disclose the arraignment date nor whether Hanson was in custody pending trial. We presume, because Hanson has not suggested otherwise, that the trial date was within the appropriate 60 or 90 days (depending on whether or not he was in custody pending trial) of his arraignment date.

time in Kitsap County, approximately 1,500 to 2,000 district court warrants are outstanding, together with approximately 500 to 600 superior court warrants. The prosecutor stated that his office did not have the capability of cross–referencing witness lists against outstanding warrants to see if warrants were outstanding for witnesses in criminal cases. In addition, he said that there was no systematic way for his district court deputies to be made aware routinely that there were outstanding warrants for witnesses. According to the prosecutor, there was also no cross referencing by his office of cost bills against outstanding warrants.

Kitsap County Sheriff's Deputy Roy Leonard Cats, testified that on April 21, 1985, he visited Hanson's parents' residence in an attempt to serve the arrest warrant on Hanson. Cats spoke, at that time, to Hanson's father and younger brother. They told Cats that they had not seen Hanson for some time and that they did not know his current whereabouts. They also indicated that they did not speak to Hanson and had no way to contact him.

Cats was advised by another sheriff's deputy that Hanson frequented the Old Town Tavern in Silverdale and that Hanson drove a backhoe in the area. Cats thus suspected that Hanson might be working in the Silverdale area. For about 2 weeks in late April, Cats spent considerable time at the Old Town Tavern looking for a 1976 Ford pickup truck, which he believed Hanson was driving. Cats said he checked the Old Town Tavern seven to eight times a day between 3 p.m. and 11 p.m. Cats did not, however, locate Hanson. Consequently, he returned the warrant as unservable.

According to Hanson, sometime after moving to Vancouver, he secured a photo identification from the Washington State Department of Licensing, listing his Vancouver address. Hanson moved back to the Bremerton area on March 24, 1986, and was arrested within a week of his return.

The trial court, without making specific findings of fact or conclusions of law, denied Hanson's motion to dismiss. After a jury trial, Hanson was convicted of all four charges.

The sole issue on appeal is whether the trial court erred in denying Hanson's motion to dismiss.[2]

Pursuant to CrR 3.3, a defendant shall be brought to trial within 60 or 90 days after the date of his arraignment. Pursuant to CrR 4.1(a), a defendant shall be arraigned "[p]romptly after the . . . information has been filed, . . ."

In *State v. Striker*, 87 Wn.2d 870, 871–72, 557 P.2d 847 (1976), our Supreme Court considered CrR 4.1 and CrR 3.3 and concluded that these rules do not authorize a long period of delay between the filing of an information and the arrest of the defendant, when a defendant is amenable to process.[3] The court said that "where, contrary to the expectation expressed in the rules, . . ." there is a period of delay between the filing of the information and the time that the defendant is brought before the court, the time for trial is deemed to operate from the time the information is filed. *Striker*, 87 Wn.2d at 875.[4] The potential harshness of this rule is tempered somewhat by CrR 3.3(g), which permits the exclusion of certain periods of time in computing the time for trial. At the time *Striker* was decided, periods of delay during which a defendant was absent were excluded from the time periods to trial then existing under CrR 3.3(d)(5). *Striker*, 87 Wn.2d at 871. CrR 3.3 was amended in 1976 to provide that when defendant was

---

[2]Hanson moved to dismiss all counts, including the three additional charges added after his arrest. Neither Hanson nor the State has addressed the question of whether the time for trial issues differ with respect to the three added charges. In light of our ruling that the time for trial rule has not been violated with regard to the initial charge, we have not confronted that issue.

[3]The State does not contend that Hanson was not amenable to process.

[4]In *Striker*, about 3½ months elapsed between the filing of the information and the defendant's appearance in court. Under the version of CrR 3.3(c)(1) that applied at the time *Striker* was decided, the time for trial dated from the defendant's preliminary appearance in court. *See Striker*, 87 Wn.2d at 871.

"absent and thereby unavailable for trial," the time period to trial (60 or 90 days) started anew when the defendant's presence in "the county" was obtained. CrR 3.3(f) (1976 version). The rule took its present form when it was amended effective August 1, 1980. CrR 3.3(g). The effect of the rule change was to eliminate entirely from CrR 3.3 any reference to a defendant's absence[5] or unavailability.

In *State v. Baxter,* 45 Wn. App. 533, 726 P.2d 1247 (1986), this Division noted the aforementioned amendments to CrR 3.3, and, in particular, the elimination of any period of absence or unavailability as an excluded period or as a trigger to start the time to trial clock anew. In *Baxter,* we held that, in light of the latter amendments to CrR 3.3, the time that a defendant was absent and thereby unavailable did not start the time to trial clock again, nor was it to be an excluded period in computing the time for trial. *Baxter,* 45 Wn. App. at 540.[6]

In cases interpreting the previous versions of CrR 3.3, a prosecutor's office was required to demonstrate that it had exercised "good faith and diligent efforts" in attempting to obtain the presence of a defendant in order to exclude, from the time to trial, the period during which a defendant was unavailable. *State v. Peterson,* 90 Wn.2d 423, 428, 585 P.2d 66 (1978). *See also State v. Alexus,* 91 Wn.2d 492, 588 P.2d 1171 (1979).

The prosecuting attorney argues that his office was diligent and that it exercised good faith in attempting to obtain the presence of Hanson. However, in light of the rule changes that we noted in *Baxter,* we must decide to what extent, if at all, good faith and due diligence affect the time

---

[5]The court in *State v. Williams,* 87 Wn.2d 916, 920, 557 P.2d 1311 (1976) held that "[a] defendant should be considered absent whenever his whereabouts are unknown and in addition he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence."

[6]Division One, in *State v. Allen,* 36 Wn. App. 582, 585, 676 P.2d 501 (1983), agreed with the parties' assumption that the time defendant is unavailable should not be considered when determining the arraignment date, notwithstanding the amendments to CrR 3.3.

for trial rule. In *Baxter,* although we said that the defendant's unavailability neither suspended the time for trial nor operated as an excluded period under CrR 3.3, we recognized that the *Striker* rule might not apply in circumstances when it was "extremely difficult to identify and locate the accused", because a delay caused by such circumstances would not be a delay contrary to the expectation expressed in the rules. *Baxter,* 45 Wn. App. at 537.

Similarly, the Washington Supreme Court in *State v. Pacheco,* 107 Wn.2d 59, 65, 726 P.2d 981 (1986), which was decided after the amendments to CrR 3.3 discussed above and our decision in *Baxter,* considered whether the State had exercised "good faith and due diligence" in bringing a defendant before the court, pursuant to the rule in *State v. Striker, supra. See also State v. Holien,* 47 Wn. App. 124, 734 P.2d 508 (1987).

■ In light of the *Pacheco* case we hold that, notwithstanding the 1980 amendments to CrR 3.3, a trial court may consider the fact that the State has exercised good faith and due diligence in attempting to bring a defendant before the court in determining whether the *Striker* rule should apply. Consequently, periods during which a defendant is absent and unavailable, although not expressly an excluded period pursuant to CrR 3.3(g), may be considered by the trial court in determining whether a delay between the charging and arraignment is contrary to the expectations expressed in the rules. To the degree that our holding in *Baxter* may be deemed inconsistent with that view, it is hereby overruled.

Here, the delay in arraigning Hanson was not "contrary to the expectation expressed in the rules." We are satisfied that Hanson was absent and unavailable, at least after June 11 when he moved to Vancouver, if not before, and that the State exercised good faith and due diligence in attempting to obtain his presence in court. The *Striker* rule that the time for trial period begins at the time the information is filed, rather than the arraignment date, therefore, should not apply.

Hanson argues that the State did not exercise good faith and was not diligent. First, Hanson argues that the State should have mailed a summons to Hanson's parents' address, and that the failure to do this constituted a lack of diligence. We disagree.

When Deputy Cats attempted to locate Hanson at his parents' address, Hanson's family indicated that Hanson was not living there and that they did not know his whereabouts. In light of that information, which Cats had no reason to disbelieve, the State cannot be faulted for failing to mail a summons to that address.

Hanson next argues that the State did not pursue all of the information it had. He points out that the district court deputy prosecutor was aware of Hanson's Vancouver address and that the prosecutor did utilize this information to locate Hanson.

Our attention has been called to *State v. Day,* 46 Wn. App. 882, 894, 734 P.2d 491 (1987), which lends some support for Hanson's view. There, the court held, in analyzing the State's good faith and diligent efforts to locate a defendant, that the "personnel of the court, the prosecutor's office and the police or sheriff's office must be treated as one entity when determining if there was knowledge of the defendant's whereabouts." The court in *Day* relied on the holding in *State v. Carpenter,* 94 Wn.2d 690, 619 P.2d 697 (1980), wherein the court implicitly imputed a police sergeant's knowledge of the defendant's address to the prosecutor.

These cases may be distinguished, however. In *Day,* the knowledge of the reporting officer was reasonably imputed to the prosecutor because they were working on the same case. By the same token, in *Carpenter,* knowledge of the investigating police sergeant was logically imputed to the prosecutor because, again, they were also handling the same case. In this case, the deputy prosecutors involved with the district court case were not connected with Hanson's case in any way. Furthermore, according to the Kitsap County Prosecutor, there was no system available to cross–

reference names of persons listed as witnesses in district court cases against the names of persons sought on warrants in superior court felony cases. We do not fault the prosecutor for failing to do that, and, indeed, we even question whether such cross referencing would be appropriate. Although the State must be diligent, or risk dismissal of its case in certain circumstances, we believe that it is unreasonable to require the State to check the names of all of its witnesses to see if warrants are outstanding for any of them. Witnesses, after all, are not suspects, and by and large they are law abiding citizens. To require the State to make such a check would not only be an unreasonable requirement, but it would appear to be an unjustified intrusion into the privacy of citizen witnesses.

Hanson also argues that the State was not diligent because Hanson called the Kitsap County Sheriff's Department and inquired if there was a warrant outstanding for his arrest and that this lead was not pursued.

It is unclear from the trial court's memorandum decision whether or not the trial court believed Hanson's testimony. But even if we accept that testimony, Hanson did not indicate whom he contacted at the sheriff's office or when he made the call. We cannot say from the facts that were before the trial court that the State failed to exercise good faith and due diligence because it failed to bring Hanson before the court based on that information.

Finally, Hanson asserts that he obtained a Washington State ID card which listed his Vancouver address. He contends that the State could have located his whereabouts by checking this source of information. Even assuming that these records are available to the authorities, we do not believe it was unreasonable for the State to fail to check this potential source of information. Hanson apparently obtained his ID card sometime after Cats made substantial efforts to serve Hanson's arrest warrant. There was nothing Cats learned in his investigation that suggested that an investigation of state ID cards would be helpful in locating

Hanson. We cannot say that the State's failure to check this source constituted a failure to exercise "due diligence." We affirm.

REED, C.J., concurs.

PETRICH, J. (concurring)—I concur in the result. Here, the defendant waived his objection to the date of arraignment and measuring the time from the date of actual arraignment to the date of trial there was no violation of the time for trial rule, CrR 3.3. Although my reason for affirmance was not the one relied on by the trial court, this court may affirm on any theory within the pleadings and proof. *Gross v. Lynnwood*, 90 Wn.2d 395, 583 P.2d 1197, 96 A.L.R.3d 187 (1978); *State v. Davis*, 29 Wn. App. 691, 630 P.2d 938, 17 A.L.R.4th 53, *review denied*, 96 Wn.2d 1013 (1981).

While the time for trial rule is a means of implementing the constitutional right to a speedy trial, it is not of constitutional magnitude. The provisions of the rule demand strict compliance and when not followed, dismissal with prejudice is required. *State v. White*, 94 Wn.2d 498, 617 P.2d 998 (1980). Unlike a requirement of prejudice before relief may be had under the constitutional guaranty of a speedy trial, a defendant need not make a showing of prejudice to support dismissal when the rule has been violated. *State v. Williams*, 85 Wn.2d 29, 530 P.2d 225 (1975). However, in order to take advantage of the rule the defendant must abide by its requirements otherwise the protection afforded may be considered waived. *State v. Bernhard*, 45 Wn. App. 590, 726 P.2d 991 (1986), *review denied*, 107 Wn.2d 1023 (1987).

CrR 3.3(e) provides specific means of objecting to the arraignment. Objections must be stated at time of arraignment and must be specific enough to apprise the trial court of the type of error claimed. *State v. Bernhard*, 45 Wn. App. at 600. Failure to object amounts to a waiver of the objection, and the date of arraignment shall be conclusively

established as the date the defendant was actually arraigned. CrR 3.3(e).

Hanson was arraigned on or about the fourth day of April 1986. No objection was made to the date of arraignment. He only complained about the trial date. Neither did his written motion for dismissal nor his supporting affidavit filed May 13 make any challenge to the date of arraignment. Measuring the time from date of arraignment to the trial there is no violation of the rule. In my view Hanson waived his objection to date of arraignment and for this reason I would affirm.

I disagree with the majority's opinion because it is based on the mistaken premise that absence or unavailability of the defendant is still a viable means of extending the time for trial notwithstanding the State Supreme Court's express elimination of this means effective August 1, 1980. CrR 3.3, 90 Wn.2d 1149. The majority's reliance on *State v. Pacheco,* 107 Wn.2d 59, 726 P.2d 981 (1986) as authority for reviving the absence or unavailability of the defendant as a means of extending the time is misplaced.

In *Pacheco,* the court was concerned with whether the proceedings initiated by complaint in district court and superseded by information and arraignment in superior court violated the time for trial rule, CrR 3.3, as amended effective August 1, 1980. This amended version of the rule expressly incorporated proceedings in which criminal charges were initiated in district court. In *Pacheco,* arraignment in superior court occurred 3 days after defendant's arrest and appearance in district court and was well within the 14–day limit from the filing of the information. CrR 3.3(c)(2)(i). However, there was a delay of over 10 months between the filing of the complaint and arraignment. During the last 4 months the defendant was incarcerated in a county adjoining that in which proceedings under review were initiated. In the face of a specific challenge to the date of arraignment, the court found no violation of the rule. In reaching this conclusion, the *Pacheco*

court focused on the express provisions of the rule. The rule specifically provides that the time elapsed in district court for the purpose of shortening the 60– or 90–day time limit for trial commences on the date the defendant first appears in district court if the defendant is not detained in jail when the complaint is filed. CrR 3.3(c)(2)(ii). There, the defendant was not in jail when the complaint was filed. Reading the rule literally, the court concluded there was no violation of the rule.[7]

The majority mistakenly assumes that the court in *Pacheco* has revived the absence or unavailability of the defendant as a means of extending the time for trial by its discussion of the State's good faith and due diligence to bring the defendant to trial. Unfortunately the court did refer to the State's good faith and due diligence and did cite cases predating the amendment to the rule which was effective August 1, 1980, namely, *State v. Alexus,* 91 Wn.2d 492, 588 P.2d 1171 (1979) and *State v. Bledsoe,* 31 Wn. App. 460, 643 P.2d 454, *review denied,* 97 Wn.2d 1026 (1982). These cases did require a showing of the State's good faith and due diligence before the defendant's absence or unavailability could be a means of extending the time for trial. However, the court in *Pacheco* did not mention the defendant's absence or unavailability as a means of extending the time for trial. In any event, any reference to the State's good faith and due diligence was unnecessary to the opinion since the court had already determined that there was no violation of the rule.

Furthermore, if the court in *Pacheco* intended to revive the unavailability and absence of the defendant as a means of extending the time one would expect a clearer expression

---

[7]In its opinion the *Pacheco* court made no reference to its earlier decision in *State v. Peterson,* 90 Wn.2d 423, 585 P.2d 66 (1978) (decided before the amended version of the rule) which declared that in the application of *State v. Striker,* 87 Wn.2d 870, 557 P.2d 847 (1976) to the time for trial rule, there was no legal significance in the distinction between charges initiated by complaint in district court rather than by information.

of the court's intention in face of its earlier explicit elimination of this means from the rule by the amendment effective August 1, 1980.

Admittedly, unavailability and absence of the defendant as a means of extending the time for trial rule seems to have crept into the case law at the Court of Appeals level. *See State v. Allen*, 36 Wn. App. 582, 676 P.2d 501 (1983); *State v. Hunnel*, 52 Wn. App. 380, 760 P.2d 947 (1988) (Alexander, J., concurring); *State v. Holien*, 47 Wn. App. 124, 734 P.2d 508 (1987) (Petrich, J., concurring); *State v. Nelson*, 47 Wn. App. 579, 584, 736 P.2d 686, *review denied*, 108 Wn. 2d 1024 (1987). However, none of the cases which conclude that unavailability and absence of the defendant is still a means of extending the time for trial have devoted any analysis to how such a proposition survives the amendment to the rules. This issue is an appropriate one for the Supreme Court to resolve.

Review denied by Supreme Court November 29, 1988.